**Joseph M. NOVAK, Plaintiff–Appellant,**

**v.**

**IRWIN YACHT AND MARINE CORPORATION; Standard Security Insurance Company of New York; CIGNA Healthplan of Florida, Defendants–Appellees.**

**No. 92–2161.**

United States Court of Appeals,
Eleventh Circuit.

March 22, 1993.

William Alexander Post, Seminole, FL, for plaintiff-appellant.

Ralph C. Losey, Subin, Shams, Rosenbluth & Moran, Losey & Brennan, Orlando, FL, Robert W. Breslin, St. Petersburg, FL, for defendants-appellees.

John E. Swisher, St. Petersburg, FL, for Irwin Yacht and Marine Corp.

Before HATCHETT, DUBINA and CARNES, Circuit Judges.

DUBINA, Circuit Judge:

Plaintiff Joseph M. Novak ("Novak") brings this appeal from the district court's grant of summary judgment for defendant CIGNA Healthplan of Florida ("CIGNA") on his suit for failure to pay medical expenses. Novak was a member of a group health plan administered by his former employer, Irwin Yacht and Marine ("Irwin").[1] The district court found that since Irwin terminated the policy prior to the date that Novak incurred his medical expenses and because equitable estoppel cannot apply against CIGNA, CIGNA was not liable for Novak's medical expenses. We affirm.

## I. STATEMENT OF THE FACTS

Novak was employed by Irwin for several years and participated in the company's health benefit plan. Beginning on February 1, 1989, Irwin provided medical insurance to its employees through CIGNA pursuant to a CIGNA Healthplan Group Service Agreement (the "policy") between CIGNA and Irwin. When Novak left his employment with Irwin in February, 1989, he elected to continue participation in the health plan under 29 U.S.C. § 1161.[2] To continue his participation, Novak was required to make payments to Irwin, who forwarded Novak's payments together with payments for all of its other employees to CIGNA. Novak made payments for cover-

---

1. The district court stayed the action against Irwin because the company is in bankruptcy. Novak does not appeal the stay.

2. The Comprehensive Omnibus Budget Reconciliation Act of 1986 ("COBRA"), Pub.L. No. 99–272, 100 Stat. 82, amended the Employee Retirement Income Security Act of 1974 ("ERISA") to require employers to allow former employees to elect to continue coverage under the employer's group health insurance plan.

age during the months of March, April, and May, 1989.

On May 15, 1989, Novak went to a hospital emergency room complaining of chest pains. The hospital contacted CIGNA as Novak's insurer. A CIGNA representative verified that Novak was insured by CIGNA and authorized his admittance to the emergency room. Subsequently, Novak was admitted to the hospital, and again a CIGNA representative verified Novak's coverage and authorized admittance. On May 22, 1989, Novak underwent gall bladder surgery, for which the hospital received prior authorization from CIGNA. When the hospital discharged Novak on May 26, 1989, his medical bills totalled $15,672.69. Novak submitted the bills to CIGNA for payment, but CIGNA refused to pay claiming that Irwin had canceled the policy effective April 30, 1989.

At that time, CIGNA asserted two grounds for its position that Irwin canceled the policy on April 30, 1989. First, Irwin paid no premiums for coverage after that date. Second, on May 30, 1989, the Chief Executive Officer of Irwin stated in a letter to CIGNA that Irwin wished to terminate retroactively its policy with CIGNA effective at midnight on April 30, 1989.

Novak filed an action against Irwin, CIGNA, and Standard Insurance Company of New York ("Standard"), CIGNA's successor as insurance provider to Irwin, in Florida state court alleging breach of contract. CIGNA removed the action to the federal district court in the Middle District of Florida alleging jurisdiction under ERISA, 29 U.S.C. § 1132. After removal, Novak filed an amended complaint alleging ERISA violations by Irwin and CIGNA but omitting Standard from the complaint. Novak claimed that he was entitled to recover unpaid medical expenses under Irwin's Employee Welfare Benefit Plan.

CIGNA moved for summary judgment against Novak contending that it was not liable because the policy was terminated at the time Novak incurred his medical expenses. Novak accepted CIGNA's statement of the facts for the purpose of summary judgment.

The district court granted the motion, holding that under the language of the policy Irwin's failure to make payments terminated the policy effective May 10, 1990, and therefore CIGNA was not responsible for any expenses incurred after that date. While the district court rejected CIGNA's argument that Irwin's May 30, 1989, letter requesting termination of the policy effectively canceled the policy retroactively before Novak incurred his expenses, the court held that Irwin's failure to make payments was sufficient by itself to effectuate the cancellation. Furthermore, the district court rejected Novak's argument that equitable estoppel should prevent CIGNA from denying coverage when CIGNA had confirmed coverage before the expenses were incurred, holding that equitable estoppel does not apply to an action under ERISA. The district court also denied CIGNA's request for attorney's fees.

Novak then perfected this appeal. CIGNA does not appeal the denial of attorney's fees.

## II. ANALYSIS

■ We may affirm the district court's grant of summary judgment only "if, after construing the evidence in the light most favorable to the non-moving party, we find that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1544 (11th Cir.1991); Fed.R.Civ.P. 56(c). If the judgment entered is correct, we may affirm the district court "on any legal grounds regardless of the grounds addressed, adopted or rejected by the district court." *Bonanni Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1561 (11th Cir.1992).

■ Since the facts of this case are not in dispute, we need only consider whether CIGNA was entitled to summary judgment as a matter of law. We review a question of law under the *de novo* standard of review. *See Woodruff v. United States*

*Dep't of Labor*, 954 F.2d 634 (11th Cir. 1992).

CIGNA argues that the district court's grant of summary judgment was proper because CIGNA had no liability under the policy.[3] CIGNA contends that Irwin canceled the policy both by failing to make payments after April 30, 1989, and by sending the May 30, 1989, letter that requested termination as of April 30, 1989. CIGNA concedes that it did not terminate the policy until it received the letter on June 1, 1989, but argues that the termination was retroactive to April 30, 1989, under the language of the policy.

Novak asserts that the language of the policy gives CIGNA only a right to terminate and that CIGNA did not exercise this right until after he had incurred his medical expenses. As a result, Novak contends that CIGNA had an obligation to pay his expenses. In the alternative, Novak argues that equitable estoppel should apply to prevent CIGNA from denying payment because CIGNA confirmed that he was part of Irwin's plan and authorized his medical expenses, then later refused to cover those expenses.

The policy provides that CIGNA "may terminate [the policy] without prior notice and at any time subsequent to the grace period ..., if [Irwin] defaults in payment or Prepayment Fees. The effective date of a termination for nonpayment of Prepayment Fees shall be the last day of the period for which a Prepayment Fee has been paid." Policy § VI.C. In addition, the policy provides that the grace period is at least ten days. Policy Face Sheet at 1.

The district court construed the policy language to mean that Irwin's payment of Prepayment Fees through April 30, 1989, rendered Novak ineligible to receive benefits after the ten day grace period. The court concluded that since Novak incurred his medical expenses after May 10, 1989, the date the grace period expired, CIGNA had no obligation to pay them.

While the district court correctly determined that CIGNA had no obligation to pay Novak's medical expenses, it erred in its interpretation of the policy language. The policy expressly gives CIGNA the right to terminate the policy without notice at any time after the expiration of the grace period. The policy provides, however, that "[t]he effective date of a termination ... shall be the last day of the period for which a Prepayment Fee has been paid." CIGNA concedes that it did not terminate Irwin's policy until it received the termination letter from Irwin on June 1, 1989, but under the policy language the effective date of that termination is April 30, 1989, the last day of the period for which Irwin had paid Prepayment Fees. Therefore, CIGNA had

---

3. The policy states in relevant part

Section V.A.—
Only Members for whom GROUP [Irwin] has paid the periodic Prepayment Fees to HEALTHPLAN [CIGNA] shall be entitled to services and benefits during the designated period for which such payment has been made.... Grace Period: This contract has a grace period as provided on the Face Sheet. This provision means that if any required Prepayment Fees is not paid on or before the date it is due, it may be paid during the following grace period. During the grace period, the contract will stay in force. If payment is not received within the grace period, coverage may be canceled at the end of the grace period and the Members may be held liable for the fee-for service costs of services received during the grace period.
....
Section VI.C.—

HEALTHPLAN may terminate this Agreement without prior notice and at any time subsequent to the grace period specified on the Face Sheet, if GROUP defaults in payment or Prepayment Fees. The effective date of a termination for nonpayment of Prepayment Fees shall be the last day of the period for which a Prepayment Fee has been paid. For any service rendered after the effective date of termination of the Agreement, the Subscriber shall pay to HEALTHPLAN a reasonable fee-for-service charge for the service so rendered.
....
Face Sheet—
Grace Period: The Agreement has a ten (10) day grace period which in no event shall be shorter than ten (10) days. This provision means that if any required premium is not paid on or before the date it is due, it may be paid during the following grace period. During the grace period, the Agreement will stay in force.

no obligation to pay any expenses incurred by Novak after April 30, 1989.[4]

Since we have determined that Irwin's failure to pay Prepayment Fees allowed CIGNA to terminate the policy effective April 30, 1989, we need not address CIGNA's alternative argument that Irwin's May 30, 1989, letter requesting retroactive termination as of April 30, 1989, canceled the policy. Nevertheless, we must address Novak's argument that CIGNA should be equitably estopped from denying coverage for him.

■ The district court determined that equitable estoppel does not apply in this case because ERISA's preclusion of oral modifications of employee benefit plans allows equitable estoppel to apply only to ambiguous provisions of the plan. Order at 6 (June 12, 1991) (citing *Nachwalter v. Christie*, 805 F.2d 956, 959–61 (11th Cir. 1986); *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.), *cert. denied*, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990)). We agree. Since ERISA preempts all state common law claims relating to employee benefit plans, we must look to the federal common law of equitable estoppel. *Kane*, 893 F.2d at 1285. We have held that while "equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee benefit plans governed by ERISA because ERISA specifically addresses those issues," we may apply equitable estoppel when the representations made were interpretations, not modifications, of the plan. *Id.* For a representation to be an interpretation of a plan, the relevant provisions of the plan must be ambiguous, that is to say, "reasonable persons could disagree as to [the provisions'] meaning and effect." *Id.*

■ The provisions at issue in this case are not ambiguous; they plainly allow CIGNA to cancel the policy at any time without notice and to make that cancellation effec-tive as of the last day of the period for which Irwin has paid premiums. Since CIGNA's confirmation of coverage and authorization of medical expenses for Novak cannot be an interpretation of an ambiguous policy provision but only an oral modification of the plan, equitable estoppel cannot apply. Although the representations by CIGNA may have led Novak to believe he was covered, in the present case we "are not at liberty to disregard the plain language of a plan in order to demand that insurers provide coverage for which no premium has been—or ever will be—paid." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 57 (4th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993).

## III. CONCLUSION

Because we hold that under the plain language of the policy CIGNA had no obligation to pay for Novak's medical expenses and that equitable estoppel does not apply in this case, we affirm the district court's grant of summary judgment.[5]

AFFIRMED.

---

4. We do not address the issue of whether a clause in an insurance policy allowing retroactive termination is unconscionable as applied to an insured who incurs expenses in reliance upon the policy because Novak did not raise that issue in the district court, or on appeal.

5. The issue of whether CIGNA may have been liable under 29 U.S.C. § 1105(a) for Irwin Yacht's breach of fiduciary duty, *see, Willett v. Blue Cross and Blue Shield of Alabama*, 953 F.2d 1335, 1340–42 (11th Cir.1992), is not before us, because it has not been raised.