Joseph WEINBERGER, Appellant,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY.**

No. 01–3627.

United States Court of Appeals,
Third Circuit.

Argued Nov. 1, 2002.

Decided Dec. 6, 2002.

Steven P. Marshall, (Argued), Wilentz, Goldman & Spitzer, Woodbridge, NJ, for Appellant.

Joshua Bachrach, (Argued), Rawle & Henderson, Philadelphia, PA, for Appellee.

Before SLOVITER, FUENTES, Circuit Judges and FULLAM,* District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Joseph Weinberger appeals from the grant of summary judgment in favor of Defendant Reliance Standard Life Insurance Company in Weinberger's action alleging that Reliance wrongfully denied him long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (hereafter "ERISA").[1] This appeal timely followed.

Weinberger asserts that the District Court misapplied the standard of review applicable to decisions by fiduciaries who have a conflict of interest acting with grants of discretion under ERISA plans, as set forth in our holding in *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir.2000). We agree. Therefore, we believe that the District Court should decide in the first instance, using the appropriate standard, whether Weinberger, who has Parkinson's Disease, has established an issue of material fact as to his entitlement to long term disability benefits.

## I.

In 1997, Weinberger sold his printing business to Xyan, Inc. and became the Director of Business Development at Xyan. His job responsibilities primarily required him to travel by car and to maintain good relations with Xyan's printing customers. As a Xyan employee, Weinberger participated in the group long-term disability plan and policy underwritten by Reliance. That policy grants Reliance, as Xyan's ERISA plan fiduciary and insurer, discretionary authority to determine eligibility for benefits. The policy provides long-term disability benefits to full-time employees who are totally disabled, following a 90–day elimination period. Reliance

---

* Hon. John P. Fullam, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Weinberger's Complaint also alleges causes of action for breach of contract, bad faith, denial of benefits, and breach of the duty of good faith and fair dealing. He has not pressed those claims on appeal and therefore is deemed to have waived them.

concedes that it was not only the plan administrator but also its funder.

Weinberger, who was first diagnosed with Parkinson's Disease in early 1990, filed a claim for disability benefits with Reliance on June 21, 1999, shortly following Xyan's termination of Weinberger's employment on April 29, 1999.[2] Reliance denied Weinberger's claim, stating that the medical evidence submitted was insufficient to establish that Weinberger was "totally disabled" at or before the time of his termination from employment and for ninety days thereafter. On February 18, 2000, in response to Weinberger's appeal from the denial of benefits, Reliance reaffirmed its decision.[3]

## II.

We exercise jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary and we must affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where a factfinder could conclude that the defendant's decision to deny benefits "was the result of self-dealing instead of the result of a trustee carefully exercising its fiduciary duties to grant" benefits due under the insurance plan, summary judgment is "inappropriate, for there is a genuine issue of material fact as to whether [the defendant] acted arbitrarily and capriciously." *Pinto,* 214 F.3d at 394.

## III.

■ When an ERISA plan grants discretionary authority to a fiduciary or administrator to construe the terms of the plan, the District Court's grant of summary judgment is made under an arbitrary and capricious standard. *See Nazay v. Miller,* 949 F.2d 1323, 1334 (3d Cir.1991); *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 119 (3d Cir.1990). Under this standard of review, the fiduciary's decision must generally be affirmed unless it was "without reason, unsupported by substantial evi-

2. Pursuant to the terms of his employment agreement, Weinberger could be terminated for any reason.

3. The medical records submitted in connection with Weinberger's disability claim included:

(1) Records of Weinberger's treating physician, Dr. Mark, covering four office visits from June 9, 1998 through November 2, 1999. These records indicate that Weinberger suffered from Stage II Parkinson's disease, but do not include specific ways in which his ability to perform his job was impaired. To the contrary, the only mentions of any specific disability are (1) an October 5, 1999 report to Reliance stating that Weinberger's symptoms then included, among other things, gait and posture disturbances, general physical and mental slowing, some motor disturbance, and tremor; and (2) a notation of Weinberger's November 2, 1999 office visit regarding his complaints of difficulty standing

for a while and some memory impairment. In addition, Dr. Mark's June 22, 1999 Physician's Statement describes Weinberger's continued physical mobility and states that he could drive at that time. Finally, Dr. Mark's October 5, 1999 Physician's Report states that despite his neurological impairment, Weinberger was able to carry out most activities of daily living as well as before the onset of his disease.

(2) Dr. Mark's response to Weinberger's July 21, 1999 written request for additional information, in which she states, in reply to the question "[W]hat happen[ed] on or about 5/2/99 to render [Weinberger] totally disabled from doing his occupation?" that his Parkinson's disease had "progressed to the point of disability."

(3) Records of Dr. Friedman, who performed a neurological evaluation on October 20, 1999, that discuss Weinberger's decreased strength, increased fatigue, and tremors at that time.

dence or erroneous as a matter of law." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993) (quotation omitted).

■ Where, however, the plan fiduciary making decisions on eligibility for benefits acts under a conflict of interest, that fiduciary's decisions are subjected to a heightened arbitrary and capricious standard of review. *See Pinto*, 214 F.3d at 387–89. Under this standard, the degree of deference normally given is lessened, along a "sliding scale", to the degree determined by the District Court to be appropriate to offset any adverse effect of the conflict of interest. *Id.* at 393. Although the fact that the decision-maker was also the insurer of the plan may not in itself warrant application of the least deferential standard of review, *see, e.g., Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1108 (7th Cir.1998), a "high degree of skepticism" is necessitated in the presence of other extrinsic evidence of bias, such as procedural irregularities or inconsistent treatment of factual information. *See Pinto*, 214 F.3d at 393–94.

### IV.

■ Here, as in *Pinto*, Reliance is acting as both the decision-maker regarding an employee's eligibility for benefits and the prospective payor of those benefits; that is, it has a financial self-interest at stake.[4] The District Court expressed the view that, standing alone, the conflict resulting from the fact that the decision-maker would be paying the benefits warranted review applying a "moderately deferential" standard, and thereupon applied that standard in this case because there was no "extrinsic evidence" that the decision to deny benefits was affected by the self-interest of the decision-maker. However, here, as in *Pinto*, we find aspects of Reliance's decision-making procedure troubling.[5] We note that the administrator rejected the only medical evidence by a physician who had examined the plaintiff, and her consistent opinions that Mr. Weinberger was indeed totally disabled as of May 1, 1999 were not contradicted by any other professional opinion. The administrator noted, but treated as essentially irrelevant, the fact that the Social Security Administration had determined, on the basis of its medical examination in October 1999, that Mr. Weinberger was totally disabled as of April 29, 1999.

Moreover, in assessing Weinberger's inability to perform the material duties of his occupation, Reliance employed the Department of Labor's Description of Occupation Titles, more specifically, its general description of a sales manager's duties. Reliance's utilization of this generic agency description, with its assumption of a sedentary occupation with minimal physical demands, appears inappropriate, particularly in light of Weinberger's provision, along with his disability claim, of a job description setting forth the actual requirements of his position, including his travel requirements.[6] The District Court concluded that Reliance's utilization of the agency description was harmless because the record

---

4. *See Pinto*, 214 F.3d at 378 (noting that "when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review"); *see also Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1561–62 (11th Cir.1990) (concluding that an insurance company acts under a "strong conflict of interest"

when both administering and paying out benefits under an ERISA plan).

5. *See Pinto*, 214 F.3d at 393 (holding that in applying a heightened arbitrary and capricious review, "we look not only at the result ... but at the process by which the result was achieved").

6. *Cf. Lasser v. Reliance Standard Life Ins. Co.*, 130 F.Supp.2d 616, 624 (D.N.J.2001) (finding

failed to establish that Weinberger was required to travel frequently or regularly, or "that any travel by car was anything other than sedentary." App. at 14 (*Weinberger v. Reliance Standard Life Ins. Co.*, No. 00–4305 (D.N.J. Aug. 23, 2001)). However, it is fair to infer that one whose job responsibilities include travel to client sites and to trade shows, as set forth in the Occupational Analysis provided with Weinberger's claim, is not expected to remain seated upon arrival at his destination.[7]

While we are not persuaded that the overall review procedure employed by Reliance in this case was as egregiously defective as that which it employed in *Pinto*, we are nonetheless concerned that a review of the merits of Reliance's interpretation of Weinberger's eligibility suggests that it was not, in some respects, " 'consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries.' " *Pinto*, 214 F.3d at 391 (quoting with approval *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80, 87 (4th Cir. 1993)). We believe that the "moderate" scrutiny applied by the District Court was, in these circumstances, unduly deferential.

## V.

■ To be eligible for long-term disability benefits under the terms of the relevant plan, Weinberger must have been totally disabled from employment prior to the date of his termination by Xyan, i.e., prior to April 29, 1999. As we noted above, there is a question whether the medical evidence submitted by Weinberger sufficiently established that at the time of his termination he was totally disabled because of his Parkinson's Disease from performing his principal job requirements of driving and developing and maintaining relations, e.g. socializing, with Xyan customers.[8] We do not decide that issue because we believe that the District Court should, in the first instance, decide the merits of the case using the correct standard of review.

## VI.

For the reasons set forth above, we will vacate the District Court's order and remand for further proceedings consistent with this opinion.

FULLAM, District Judge, concurring.

FULLAM, District Judge.

I join in Judge Sloviter's opinion in all respects. I write separately only to emphasize, in view of the dissenting opinion, that the record before the District Court

---

agency definition of occupation "far too blunt an instrument to be instructive as to the material duties of" a specific occupation.

7. Weinberger also asserts that Reliance evidenced bias in its decision-making by crediting only selected portions of the medical evidence, by citing contradictory alternative reasons for its denial of benefits, and by failing to perform an independent medical evaluation. *See Pinto*, 214 F.3d at 393–94 (including, in account of "procedural anomalies" warranting "a high degree of skepticism", Reliance's self-serving selectivity in use of medical evidence and expert opinions and inconsistent treatment of the same authority). *But see id.* at 394 n. 8 (noting that focus on process should not be read to require an additional duty to gather more information).

8. Xyan's termination of Weinberger's employment does not, of course, in itself evidence his disability. Neither party sought to depose any Xyan employee or officer as to the reason for its termination of Weinberger. When questioned about this at the oral argument, Xyan's counsel referred us to the provision of Weinberger's contract specifically providing that Xyan would be free to terminate his employment for any reason.

demonstrated, on its face, not only that the decision to deny disability benefits was made by persons acting under a conflict of interest, but also that self-interest may well have influenced the decision. Plaintiff-appellant, in my view, clearly sustained his burden of proving that little or no deference was due the insurer's decision.

Persons familiar with Social Security disability litigation are certainly aware that the award of disability benefits at the administrative level is not easily won. An impartial decision-maker in this case could not, in my view, simply dismiss the Social Security award as irrelevant because not binding upon the insurance company. At the very least, one would expect a better explanation than that.

I therefore agree that the District Court applied the wrong standard of scrutiny, and concur in the remand.

FUENTES, Circuit Judge, dissenting.

FUENTES, Circuit Judge.

Although I concur with the Court's analysis as set forth in Parts I–III, I disagree with the conclusions drawn in Parts IV and V. After reviewing the record, I believe the District Court properly applied our instructions in *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000), when it determined the relevant standard of review. I also believe the District Court's decision to grant summary judgment in favor of Reliance was appropriate on the record before it. For these reasons, I respectfully dissent.

In *Pinto*, we recognized that when an insurance company is both administrator and funder of a benefits plan, heightened scrutiny is required. *See id.* at 387. As the majority also noted, the appropriate degree of scrutiny to be applied varies along a sliding scale, "according different degrees of deference...." *Id.* at 391.

The degree of deference will depend in any given case on the presence of conflict, bias, or procedural irregularities on the part of the insurer that would weigh in favor of greater skepticism. The point that bears repeating here, however, is that *Pinto* intentionally preserved the status quo with respect to the burden allocation—that is, plaintiff continues to bear the burden of establishing a conflict, bias, or procedural irregularity sufficient to trigger more skeptical review. *See id.* at 392 ("We think the best way to 'consider' these *potentially* relevant factors (in this case, the structural conflict of interest) is to use them to heighten our degree of scrutiny, *without actually shifting the burden away from the plaintiff.*") (emphasis added).

As the District Court noted, plaintiff Joseph Weinberger ("Weinberger") failed to produce any evidence below that would substantiate a conflict or bias that would trigger a high degree of skepticism in reviewing the denial of Weinberger's benefits. Instead, it appears that Weinberger is attempting to argue on appeal, for the first time, that Reliance's review process was infected with procedural irregularities. After reviewing the record, however, these purported irregularities do not appear altogether irregular. For instance, Weinberger claims that it is suspicious that Reliance has no mechanism for reviewing its denial of benefits even though the Social Security Administration ("SSA") awarded disability benefits to Weinberger. For this proposition, Weinberger relies on *Pinto*. I believe that Weinberger has misconstrued the factual similarity between his case and *Pinto*. In *Pinto*, we found an irregularity in part because although Reliance had initially based its denial on SSA's rejection of the plaintiff's claim, it later refused to review its denial when the SSA reversed its own determination. *Id.* at 393. Here, Weinberger has failed to prove

that SSA's decision was in any way relevant to Reliance's. Furthermore, after a thorough review of the record, I find that none of the documents cited by Weinberger support his contention that the SSA determination should inform the review of Weinberger's separate claim for benefits from Reliance. Rather, the only probative document relating to the SSA determination is the report of Dr. Mark Friedman discussing an October 20, 1999 medical examination. App. at 99. Dr. Friedman's report merely records his observations about Weinberger's condition as of that date, without giving any indication that Weinberger's "disability" manifested itself before April 29, 1999—the date of Weinberger's termination. Without a showing of the standards applied by SSA, the time frame for its decision, and the bases for its decision, Weinberger cannot rely on a third party's determination to inform Reliance's.

Second, Weinberger claims that Reliance's review was irregular because it selectively relied on portions of the medical record while it ignored the parts that support his claim for benefits. I fail to see how the record supports such a conclusion. Rather, the record reflects that Reliance relied primarily on the reports of Dr. Margery Mark, Weinberger's treating physician. The relevant aspects of Dr. Mark's reports overwhelmingly indicate that Weinberger had the ability to perform most, if not all, of the functions required in a sedentary occupation and that he was able to continue most activities associated with daily living. While there are statements regarding neurological impairment, this hardly renders Reliance's review irregular. It appears that Reliance attempted to make an informed decision based on all of the evidence submitted by Weinberger.

Third, Weinberger claims that Reliance's review was tainted by its failure to obtain an independent medical evaluation. While the failure to obtain an independent medical evaluation may be relevant to the limited issue of the propriety of the review process, I fail to see how that omission is at all relevant here, where there was a well-documented medical record as evidenced by Dr. Mark's reports. Weinberger has not shown that an independent medical evaluation would have contributed anything to the review process.

Finally, the majority notes that it was unusual for Reliance to employ the Department of Labor's Description of Occupational Titles ("DOT"), as opposed to the job descriptions submitted by Weinberger which more accurately reflect the requirements of his position. While I recognize that Reliance's decision to employ the DOT was curious, I am not certain that it rises to the level of a procedural irregularity that would warrant skeptical review. Furthermore, in light of my reading of *Pinto,* the burden still rested with Weinberger to show that the use of the DOT tainted the review process in some material way. As the District Court noted, however, the DOT's and Weinberger's descriptions were not entirely inconsistent and both acknowledged that Weinberger's position was largely sedentary. To be sure, Reliance did not perform a flawless review in this case. I do not believe, however, that the imperfections here resulted in the type of bias or conflict that *Pinto* requires for more skeptical review of an administrator's decision.

For these reasons, I find that Weinberger failed to establish that a high degree of skepticism was warranted in this case and that the District Court properly determined that it could reverse Reliance's denial of benefits only if the denial was arbitrary and capricious. Along the slid-

ing scale, the District Court appropriately accorded Reliance's decision a moderate degree of deference. In light of this standard, I also find that the District Court properly granted summary judgment in favor of Reliance, as its decision was supported by the record. Accordingly, I would affirm the judgment of the District Court.