Alvaro UMANO, Luz Helena Umano, and Regla Zuloaga, Plaintiffs,

v.

W.C. ROBINSON & ASSOCIATES, INC. Defendant.

W.C. Robinson & Associates, Inc., Third Party Plaintiff,

v.

Foundation Health, a Florida Health Plan, Inc., Third Party Defendant.

Nos. 01–2626–CIV–GOLD, 01–2626–CIV–SIMONTON.

United States District Court, S.D. Florida.

Aug. 31, 2004.

---

William Dunbar Tucker, William D. Tucker, Fort Lauderdale, FL, Lawrence Joseph McGuinness, Miami, FL, for Plaintiffs.

William Christopher Robinson, Miami, FL, for W.C. Robinson & Associates, Inc.

Andres Gonzalez, Law Offices of Steven M. Ziegler, Hollywood, FL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before me upon Third Party Defendant's Motion for Summary Judgment [DE 171], filed May 7, 2004. Third Party Plaintiff ("W.C. Robinson & Associates" or "Robinson") filed its Opposition to Defendant's Motion [DE 177] on June 9, 2004. Third Party Defendant ("Foundation") filed its Reply [DE 182] on July 2, 2004.

I held oral argument on this Motion on August 27, 2004.[1] Upon review of the parties' arguments, the record, relevant statutes, and case law, I grant Foundation's Motion for Summary Judgment.

### Factual Background [2]

In July of 2000, Robinson submitted an application to Foundation in order to establish group health insurance coverage for its employees commencing on September 1, 2000. (Joint Statement ¶ 4). The group health plan, titled the Florida Small Group Health Benefit Contract ("Contract"), was sponsored and maintained by Robinson through a contract with Foundation governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (Id. at ¶ 2). The Contract specifies that the premium payments for the coverage had to be submitted on the first of each month. (Id. at ¶ 6). The Contract also specifies that the grace period for payment of premiums by Robinson to Foundation was ten days. (Id. at ¶ 6). Finally, the Contract provides that if premium payments are not paid within the ten-day grace period, Foundation may terminate the Contract. (Id. at ¶ 7). The Contract reads, "[Foundation] may terminate this Contract as of any premiums due date if the Small Employer [Robinson] has not paid the required premiums by the end of the grace period, as defined in the Grace Period provision." (Foundation's Exh. B at 4).

In July 2000, Robinson submitted a completed application along with a check for part of the September 2000 premium. (Id. at ¶ 8). After the application and check were submitted, Foundation began providing coverage for Robinson's employees on August 16, 2000. (Id. at ¶ 9). The first premium bill Foundation sent to Robinson was on September 15, 2000. (Id. at ¶ 8). The bill included charges for September 2000 that were not covered by the initial check and charges for October 2000. (Id. at ¶ 9).

---

1. At oral argument, Third Party Plaintiff Robinson raised COBRA for the first time. Robinson argued that Third Party Defendant Foundation has a fiduciary obligation to Plaintiffs under COBRA. In response, Foundation argued that once the Contract was terminated by Foundation, there could be no fiduciary obligation under COBRA because there is no COBRA coverage left to extend. Instead, Robinson, as Plaintiffs' employer, bore any fiduciary obligation under COBRA, not Foundation. I agree with Foundation and find that the COBRA argument is inapplicable in this case.

2. The Factual Background draws heavily from the parties' Joint Statement of Stipulated, Uncontested Facts Which Should Require No Proof at Trial ("Joint Statement"), included in the parties' Joint Pretrial Stipulation [DE 192], filed July 16, 2004. This Background also presents facts from the Statement of Undisputed Facts included in Foundation's Motion for Summary Judgment, and the Statement of Undisputed Facts in Robinson's Opposition, in which Robinson notes that it "agrees with the statement as outlined by Foundation but would add ... facts." I include these additional facts if they are material. There are no material factual disputes in the parties' Statements of Undisputed Facts. Finally, I include facts from my own review of the record.

By November 14, 2000, Robinson had not submitted a payment for the month of November. (*Id.* at ¶ 10). Accordingly, the Contract was terminated as of October 31, 2000. (*Id.* at ¶ 11).

In January of 2001, Robinson, through its Office Manager Lavonte Gary Stubbs, contacted Foundation about getting its account in order. (*Id.* at ¶ 12). The internal policy at Foundation at the time was that if a company was terminated for non-payment, the company would receive a one-time reinstatement, and after that no more reinstatements were allowed for that group. (*Id.* at ¶ 13). On January 16, 2001, after Robinson submitted payments, the Contract was reinstated retroactive to October 31, 2000. (*Id.* at ¶ 14).

Robinson made no payment in February. (*Id.* at ¶ 15). On March 14, 2001, Stubbs contacted Foundation and admitted that there had been a mistake on Robinson's part regarding the premium payments for February 2001. (*Id.* at ¶ 15). The Contract was subsequently terminated as of January 31, 2001. (*Id.* at ¶ 16).

Plaintiffs Alvaro Umano ("Alvaro"), Luz Umano ("Luz"), and Regla Zuloaga ("Regla"), Robinson's employees, have been billed for medical procedures that took place after January 31, 2001. (*Id.* at ¶¶ 17, 18). Alvaro was scheduled for surgery on January 16, 2001. (Robinson's Exh. D). The surgeon's office sent Foundation a letter on December 22, 2000 requesting authorization for the surgery. (*Id.*). Luz, Alvaro's wife, testified that there was a lapse in insurance, resulting in problems with her and her husband's medical coverage in December 2000 and January 2001. (Robinson's Exh. F at 15–20). Luz could not recall whether the medical bills prior to January 1, 2001 remain outstanding. (*Id.* at 25).

According to the affidavit of Debra Faulkner, Foundation's Vice President of Operations, any initial denials of insurance for Plaintiffs prior to January 31, 2001 occurred because Robinson failed to make timely payments in November and the Contract had not yet been reinstated. (Foundation's Reply Exh. D). After the Contract was reinstated, Plaintiffs' bills were paid until the contract was terminated January 31, 2001. (*Id.*). No one has appealed with Foundation its alleged denial of coverage prior to January 31, 2001. (*Id.*).

On June 2, 2003, Robinson filed an Amended Third Party Complaint [DE 113] stating that Foundation wrongfully cancelled health insurance coverage in March 2001 effective January 31, 2001. (Complaint ¶ 12). Robinson states that it appealed the cancellation decision, and its appeal was rejected. (*Id.* at ¶ 25). Robinson also alleges that Foundation wrongfully denied payment of claims for treatment for Plaintiffs Luz and Alvaro. (*Id.* at ¶¶ 15, 18). Based on these allegations, Robinson states that Foundation willfully breached the Contract (*id.* at ¶ 27), and seeks appropriate equitable relief including reinstatement of the contract and payment for Plaintiffs' outstanding medical bills.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence pres-

ents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646.

Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2510–11; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001).

If the non-moving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the court must enter summary judgment for the moving party. *Id.* (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552). Moreover, when the non-moving party bears the burden of proof on an issue, the moving party need not support its motion with affidavits or other similar material negating the opponent's

claim. *Id.* (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553). Instead, the moving party simply may show that there is an absence of evidence to support the non-moving party's case. *Id.* (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-movant. *Id.* (citation omitted). Nevertheless, in determining whether to grant summary judgment, the court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513.

### ANALYSIS

Applying these well-established principles to the facts of this case lead me to grant summary judgment in Foundation's favor.[3] Based on the record and applicable case law, I conclude that there is no genuine issue of material fact as to whether Foundation wrongfully (1) terminated the Contract or (2) denied benefits under the Contract before it was terminated.

### I. Foundation did not wrongfully terminate the Contract.

 Robinson argues that in the fall of 2000, Foundation had internal operating

---

**3.** I also conclude that summary judgment is not premature. Robinson argues that discovery regarding Foundation's internal policy changes remains outstanding. (Opposition at 2–3). The Scheduling Order in this case set a discovery deadline of April 23, 2004 for all non-expert discovery. [**DE 157**]. On April 26, 2004, after this deadline had passed, Rob-

inson sought a thirty-day extension of the deadline. [**DE 169**]. The Motion was granted. [**DE 176**]. After the close of discovery, Robinson filed its Opposition on June 9, 2004. Accordingly, Robinson had the benefit of all the discovery that is going to be permitted in this case when filing its Opposition. Therefore, summary judgment is not premature.

procedures which allowed for reinstatement after termination of coverage. (Opposition at 5–6). Robinson also states that Foundation was in the "throes of financial disaster" at the time it decided to cancel the Contract. (*Id.* at 5). Citing an unpublished case from another circuit, Robinson argues that the decision to cancel coverage was "arbitrary and capricious" and the result of self-dealing, and that Foundation's internal policies could serve as written modifications of the plan allowing reinstatement despite Robinson's failure to pay. (Opposition at 5 (citing *Weinberger v. Reliance Standard Life Ins. Co.*, 54 Fed.Appx. 553, 2002 WL 31746546 (3rd Cir. Dec. 6, 2002))).

 Robinson cites irrelevant nonbinding case law and misinterprets applicable precedent. In *Weinberger*, the court explained that a heightened standard of review applies to decisions made by a plan fiduciary who also makes decisions on eligibility for benefits. *Weinberger*, 54 Fed. Appx. at 255–56, 2002 WL 31746546, at *2. In that case, the relevant decision involved eligibility under the contract, not cancellation of the contract. *Id., see also Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir.2004) (holding that a heightened arbitrary and capricious standard of review applied to the decision to *deny* benefits under the ERISA plan).[4] In a previous Order, however, I determined that a *de novo* standard of review applies to Robinson's claims that Foundation wrongfully terminated the contract at issue in this case. (Order Determining Standard of Review and Scope of Discovery [DE 136], filed August 21, 2003, at 25).

Further, Robinson's wrongful termination claims stem from its suggestion that although termination did not violate the written ERISA plan, the termination was an arbitrary and capricious decision based on the fact that Foundation may have had an internal policy that modified the written Contract.

 The Eleventh Circuit has explained, however, that written employee benefit plans governed by ERISA may not be modified by oral or informal written agreements. *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir.1986). The court noted that "ERISA expressly requires that employee benefit plans be 'established and maintained pursuant to a written instrument.' " *Id.* at 960 (quoting 29 U.S.C. § 1102(a)(1)). According to the court, the requirement that ERISA plans be maintained in writing precludes oral modifications of such plans, and the doctrine of estoppel cannot be used to alter this result. *Id.* Further, the court explained that ERISA requires that each plan shall " 'provide a procedure for amending such a plan, and for identifying the persons who have authority to amend the plan.' " *Id.* (quoting 29 U.S.C. § 1102(b)(3)). The court stated that by explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to modify an ERISA plan. *Id.* (citation omitted); *see also Adams v. Thiokol Corp.*, 231 F.3d 837, 843 (11th Cir.2000) (citing *Nachwalter*); *Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1081 (11th Cir.1994) (holding that "any modification or amendment to an ERISA plan can be supplemented or ap-

---

4. To the extent that Robinson is arguing that a heightened standard of review applies because Foundation denied benefits prior to termination of the Contract, it has not exhausted administrative remedies on Foundation's alleged decision to deny benefits, and therefore, it cannot bring such a claim as a matter of law. *See Infra* Part II.

plied only *after* the amendment has been appropriately adopted in a formal, complete, and written form") (emphasis in original).

■ Nevertheless, a plaintiff can use equitable estoppel to escape application of a written ERISA plan if (1) the relevant terms of the plan are ambiguous, and (2) if there is an oral interpretation of the ambiguous terms of the plan.[5] *See, e.g., Katz v. Comprehensive Plan of Group Ins., Alltel,* 197 F.3d 1084, 1090 (11th Cir.1999) (explaining this two-part test after noting that "[t]his circuit has created a very narrow common law doctrine under ERISA for equitable estoppel"); *Kane v. Aetna Life Ins.,* 893 F.2d 1283 (11th Cir.1990). If a plan is ambiguous, statements resolving the ambiguity are considered interpretations, rather than prohibited modifications, of written ERISA plans. *Id.* at 1286.

Based on these principles, the Eleventh Circuit affirmed summary judgment for the defendants in *Novak v. Irwin Yacht & Marine Corp.,* 986 F.2d 468 (11th Cir. 1993). In that case, an employee named Novak sued his employer Irwin and insurer CIGNA alleging breach of a policy governed by ERISA. *Id.* The policy provided that the insurer, CIGNA, " 'may terminate [the policy] without prior notice and at any time subsequent to the grace period ..., if [Irwin] defaults in payment or Prepayment Fees. The effective date of a termination for nonpayment of Prepayment Fees shall be the last day of the period for which a Prepayment Fee has been paid.' " *Id.* at 471 (brackets and ellipses in original) (quotation omitted). In addition, the policy provided that the grace period was at least ten days. *Id.* The court explained that the plaintiff could escape application of the plan only if its provisions were ambiguous, i.e., " 'reasonable persons could disagree as to [the provisions'] meaning and effect.' " *Id.* at 472 (brackets in original) (quotation omitted). The court concluded that the provisions at issue were not ambiguous; "they plainly allowed CIGNA to cancel the policy at any time without notice and to make that cancellation effective as of the last day of the period for which Irwin, the employer, had paid premiums.' " *Id.* Because the plan was not ambiguous, equitable estoppel could not apply. *Id.* Accordingly, summary judgment was affirmed in favor of the insurer and employer. *Id.*

Thus, the Eleventh Circuit does not permit oral or informal written modifications

5. In addition to allowing equitable estoppel claims to bar application of ERISA plans in limited circumstances, the Eleventh Circuit has explained that in certain circumstances, waiver claims can be brought under ERISA. *See Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341 (11th Cir.1994). A waiver claim can only arise if a plaintiff establishes that the defendant intentionally relinquished a known right and that the defendant unjustly enriched itself at the expense of the plaintiff. *Id.* at 1347–48. In *Glass,* the record clearly showed that the defendant insurer did not know beyond doubt that the plaintiff might have been ineligible under the plan when the plan became effective. *Id.* at 1348. Second, the plaintiff had failed to adduce evidence of any unjust benefit. *Id.* Although the insurer accepted some premiums during the investiga-

tion and resolution of the eligibility issue, there was no evidence that the insurer attempted to unjustly enrich itself at the expense of an ineligible plan participant. *Id.* Accordingly, summary judgment for the insurer was affirmed. *Id.*

In this case, Robinson does not make a waiver argument. In any event, I note that Robinson has presented no evidence that Foundation intentionally relinquished the right to terminate the Contract if premiums were not paid by the end of the grace period. Further, Robinson has presented no evidence that Foundation attempted to unjustly enrich itself at Robinson's or Plaintiffs' expense. Accordingly, Foundation did not waive application of the Contract provisions.

of ERISA plans. Claims of equitable estoppel are permitted only if (1) there is an ambiguous term in the plan, and (2) there is an oral interpretation of the ambiguous term. *See, e.g., Katz*, 197 F.3d at 1090. In this case, the record is undisputed that the Contract is a written plan governed by ERISA. (Joint Statement ¶ 2; Foundation Exh. B). The parties agree that this written plan specifies that premium payments had to be submitted on the first of each month. (Joint Statement ¶ 6). The Contract further specifies that the grace period for payment of premiums by Robinson to Foundation was ten days. (*Id.* at ¶ 6). Finally, the Contract reads, "[Foundation] may terminate this Contract as of any premiums due date if the Small Employer [Robinson] has not paid the required premiums by the end of the grace period, as defined in the Grace Period provision." (Foundation's Exh. B at 4). The parties agree that these terms provide that if premium payments are not paid within the ten-day grace period, then Foundation may terminate the Contract. (Joint Statement at ¶ 7).

Reasonable people could not disagree as to the meaning and effect of these provisions: they unambiguously state that if Robinson failed to pay its premiums by the end of the ten-day grace period, the Contract could be terminated as of the date the premiums were due. *See Novak*, 986 F.2d at 472 (explaining that a provision in an ERISA plan is ambiguous if reasonable persons could disagree as to the provision's meaning and effect). Further, even if Foundation had written internal policies that modified the Contract,[6] binding precedent precludes these policies from modifying the unambiguous terms of the Contract. *Nachwalter*, 805 F.2d at 960 (explaining that Congress rejected the use of informal written agreements to modify an ERISA plan); *see also Adams v. Thiokol Corp.*, 231 F.3d 837, 843 (11th Cir.2000) (citing *Nachwalter*); *Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1081 (11th Cir.1994) (holding that "any modification or amendment to an ERISA plan can be supplemented or applied only *after* the amendment has been appropriately adopted in a formal, complete, and written form"). Thus, Foundation did not wrongfully terminate the Contract, and there are no grounds to reinstate the Contract and require Foundation to pay Plaintiffs' medical bills incurred after the Contract was terminated effective January 31, 2001.

## II. Foundation cannot be sued for denying coverage prior to termination.

 Robinson argues that medical bills Plaintiffs incurred prior to January 31, 2001 were not paid. It bases this argument in part on allegations in Plaintiffs' complaint (Opposition at 8 (stating that Plaintiffs' complaint alleges that coverage was denied prior to termination of the Contract)), which I am of course not permitted to accept as true at this summary judgment stage. The only facts from the record that could remotely support this argument is that Alvaro was scheduled for surgery on January 16, 2001 (Robinson's

---

6. Foundation does not dispute that it had an internal policy allowing for a one-time reinstatement of the Contract after termination for non-payment. (Joint Statement ¶ 13). The parties agree, however, that the Contract was reinstated once after non-payment. (*Id.* at ¶ 12–14). Thus, I note that there is no dispute that Foundation gave Robinson the benefit of this informal policy even though it was not required to do so by the Contract's provisions or by law.

Exh. D), the surgeon's office requested authorization for the surgery from Foundation on December 22, 2000 (*id.*), and there were lapses in insurance in December 2000 and January 2001 (Robinson's Exh. F). The parties agree, however, that Robinson failed to make payments under the Contract in November 2000 (Joint Statement ¶ 10), the Contract was terminated as of October 31, 2000 (*id.* at ¶ 11), and the Contract was not reinstated until January 16, 2001 (*id.* at ¶ 14). Any initial denials of insurance for Plaintiffs prior to January 31, 2001 occurred because Robinson failed to make payments and the Contract had not yet been reinstated. (Foundation's Reply Exh. D). After the Contract was reinstated, Plaintiffs' bills were paid until the contract was terminated January 31, 2001. (*Id.*). Further, Foundation's alleged denial of coverage for services prior to January 31, 2001 has not been appealed with Foundation. (*Id.*).

Robinson cannot succeed on its claims regarding the denial of coverage prior to January 31, 2001 as a matter of law because it did not exhaust administrative remedies on these claims. The Eleventh Circuit has explained that "it is no longer open to serious dispute that plaintiffs in ordinary breach-of-contract ERISA actions must normally exhaust available administrative remedies." *Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897, 900 (11th Cir.1990). It is undisputed that Robinson never tried to appeal any supposed denials of coverage prior to January 31, 2001 through Foundation's internal appeals process.[7] (Reply Exh. D

(stating that the "adjudication by Foundation of a claim for services rendered to [Plaintiffs] prior to January 31, 2001 has not been appealed with Foundation by anyone")). Based on this undisputed fact, Robinson cannot bring its claim under ERISA with respect to any alleged denials of coverage prior to January 31, 2001.

## CONCLUSION

There is no genuine issue of material fact that the Contract's provisions regarding termination are unambiguous. Further, the record shows that Robinson failed to exhaust administrative remedies regarding its claim that Foundation denied coverage prior to termination. Based on the foregoing, it is hereby ORDERED AND ADJUDGED:

1. Foundation's Motion for Summary Judgment [**DE 171**] is GRANTED.

2. Because I am entering summary judgment on all claims against Foundation in this action, Foundation's Motion in Limine [**DE 91**] is DENIED AS MOOT.

## *ENTRY OF FINAL JUDGMENT DISMISSING THIRD PARTY COMPLAINT*

On August 27, 2004, the Court granted Third Party Defendant's Motion for Summary Judgment in its entirety. In accordance with Federal Rule of Civil Procedure 58 and the Court's Order granting Third Party Defendant's Motions for Summary Judgment, it is the judgment of the Court that Third Party Plaintiff shall take

---

7. Although I do not accept the following allegation as true at this summary judgment stage, I note that in contrast to the lack of exhaustion with respect to the pre-January 31, 2001 denials claim, the Amended Third Party Complaint alleges that Robinson appealed Foundation's decision to *cancel* coverage, and that appeal was rejected. (Complaint ¶ 25).

nothing in this case. The Amended Third Party Complaint is hereby dismissed. The Court reserves the right to consider costs. The Court having granted summary judgment in favor of Third Party Defendant, it is hereby **ORDERED AND ADJUDGED:** The Third Party Complaint is dismissed.