Louise D. THOMAS, Dennis D. Darden, and Linda Jean Allen, on behalf of themselves and all others similarly situated, Plaintiffs

v.

SMITHKLINE BEECHAM CORPORATION et al., Defendants.

No. 00–2948.

United States District Court, E.D. Pennsylvania.

Dec. 22, 2003.

John Shniper, Phoenixville, PA, Joseph A. Osefchen, Philip Stephen Fuoco, Philip Stephen Fuoco, Haddonfield, NJ, Paula R. Markowitz, Markowitz & Richman, Philadelphia, PA, for Plaintiffs.

Brian T. Ortelere, Morgan Lewis & Bockius LLP, David F. McCann, Laurence Z. Shiekman, Michael H. Rosenthal, Pepper Hamilton LLP, Greg A. Rowe, Bazelon Less & Feldman, Philadelphia, PA, for Defendants.

Patrick Joseph Hughes, Connell Foley LLP, Roseland, NJ, for Respondent.

## MEMORANDUM and ORDER

YOHN, District Judge.

Louise D. Thomas, Dennis D. Darden, and Linda Jean Allen (collectively, "named plaintiffs") bring this action on behalf of themselves and all other similarly situated persons (collectively, "class members") against SmithKline Beecham Corporation ("SKB"), various SKB employee benefit plans ("benefit plans"), and the administrators of those benefit plans ("administrators") (collectively, "defendants" or "SKB"). The plaintiffs seek declaratory, equitable and legal relief establishing their rights to receive benefits from SKB under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

Currently pending before the court are: (1) defendants' motion for summary judgment on counts I through VII of the amended complaint; (2) defendants' motion for summary judgment against individual plaintiff Linda Allen, who is not a member of the certified class; and (3) defendants' motion for summary judgment on counts VIII through XIII of the supplemented amended complaint. Since the arguments in support of defendants' motion for summary judgment against individual plaintiff Allen are identical to their arguments against the class on counts I through VII, Def. Br. II 2,[1] Allen's claims for benefits under the retirement plans will not be analyzed separately, but rather will be incorporated into the court's discussion of the class' claims.[2] The court has considered the motions for summary judgment of defendants SmithKline Beecham Corporation et al., the accompanying memoranda of law, defendants' statements of

---

1. Because defendants have filed three separate motions for summary judgment, plaintiffs have filed three responses in opposition, and defendants have filed two replies in further support of their motions for summary judgment, it is necessary to distinguish the many documents to which I refer throughout this opinion. Defendants' motion for summary judgment on counts I through VII of the class and brief in support thereof will be referred to as "Def. Br. I," and defendants' exhibits to this motion will be referred to as "Def. Ex. I." Similarly, plaintiffs' response in opposition to defendants' motion for summary judgment on counts I through VII of the class and brief in support thereof will be referred to as "Pl. Br. I," and plaintiffs' exhibits to this opposition will be referred to as "Pl.Ex. I." The documents relating to defendants' motion for summary judgment on counts I through VII of individual plaintiff Allen will be distinguished by use of "II" in place of "I." Finally, the documents relating to defendants' motion for summary judgment on counts VIII through XIII of the class will be marked with a "III."

However, since defendants' memorandum in support of their motion for summary judgment on counts VIII through XIII incorporates the arguments articulated in their memorandum of law opposing plaintiffs' motion for leave to supplement the amended complaint (filed on April 29, 2002) without further explanation, the April 29 memorandum will be referred to as "Def. Br. III." All other notations regarding this last summary judgment motion will follow the pattern stated above.

2. Defendants' motion for summary judgment against Allen focuses on her alleged claim for benefits, both during the time she was a temporary employee of SKB and while she was a Kelly employee. However, Allen has admitted that she "is not pursuing any claims for welfare benefits." Pl. Br. II 3. Hence, there is no need to address the specifics of defendants' motion for summary judgment. All of Allen's claims will be addressed along with the class' in Parts I through IV of this opinion.

undisputed facts, plaintiffs' responses in opposition thereto, and defendants' reply memoranda in further support of their motions for summary judgment. For the reasons set forth below, defendants' motions are granted in part and denied in part. More specifically, I will grant defendants' motions for summary judgment on plaintiffs' claims contained in counts III, IV, V, VI, VII, XI and XII, and deny defendants' motions for summary judgment on plaintiffs' claims contained in counts I, II, VIII, IX, X and XIII

## PROCEDURAL BACKGROUND

This class action is based on the allegations of the named plaintiffs that defendants have violated the rights of a large number of individuals to accrue benefits in SKB employee benefit plans. Plaintiffs claim that SKB improperly, but purposefully, classified individuals as "temporary" or "leased" employees, instead of common law employees, in order to deny or delay these employees from attaining eligibility for SKB employee benefits. Based on this practice, on June 9, 2000, Louise Thomas ("Thomas") and Dennis Darden ("Darden") brought this ERISA action against SKB and the administrators of the SKB employee benefit plans on behalf of themselves and all others similarly situated, seeking a declaratory judgment that the defendants include them as participants in the benefit plans (count I) and requesting injunctive relief in the form of a court appointment of an independent fiduciary for each benefit plan (count II). Also alleged in the complaint are claims that defendants violated: 29 U.S.C. § 1140 by refusing to allow common law employees to participate in the benefit plans (count III); 29 U.S.C. § 1104 by breaching their fiduciary duties (counts IV and V); 29 U.S.C. § 1024(b)(1)(A) by failing to provide documents and information regarding the benefit plans to the plaintiffs (count VI);

and, 29 U.S.C. § 1052 by instituting a de facto extension of the minimum service provision of each benefit plan (count VII). On August 8, 2000, Thomas and Darden amended their complaint to add Linda Allen ("Allen") as a named plaintiff and the benefit plans as defendants. This suit was certified as a class action on July 3, 2001 pursuant to Rule 23 of the Federal Rules of Civil Procedure. Allen, however, is not included in the class, but rather asserts an individual claim for benefits.

On April 3, 2002, plaintiffs filed a motion to supplement their amended complaint, which was granted pursuant to Federal Rule of Civil Procedure 15(d) and over defendants' objections on September 5, 2002. The supplement provides greater specificity as to the factual basis for the claims of breach of fiduciary duty and violation of 29 U.S.C. § 1140 raised by plaintiffs in their amended class complaint. These more specific allegations are that defendants' breached their fiduciary duty by: failing to award plaintiffs the vesting and eligibility service credits to which they were entitled (count VIII); failing to keep track of the class members' eligibility for benefits (count IX); and, requiring plaintiffs to provide SKB with detailed information about their temporary service at SKB (count X). Further, plaintiffs allege this information gathering requirement was a pretext for withholding credits owed to certain class members, namely: the approximately 550 class members who did not provide information and were therefore not granted benefits (count XI); and the approximately 250 class members who did provide information, but who nonetheless were not granted benefits (count XII). Finally, plaintiffs allege that defendants breached their fiduciary duty by failing to inform the class members of their right to appeal and the process for doing so (count XIII).

## FACTUAL BACKGROUND

The following facts are undisputed.

The three named plaintiffs "work" or have "worked" at SKB. Thomas received work assignments at SKB from Olsten Temporary Services, an employment agency. Beginning in October 1992, Thomas worked full-time as a coordinator in a SKB warehouse in King of Prussia, Pennsylvania. Thomas contends that she was a common law employee of SKB. In April 1994, Thomas was laid off by SKB. However, in December 1994, Thomas was notified by SKB that the coordinator job was available, and that, if she was interested in returning to work at SKB, she should report to Kelly Services, an employment agency. Soon thereafter, Thomas reported to Kelly Services, which was located at SKB's King of Prussia warehouse, and returned to work at SKB. On March 1, 1999, Thomas became a full-time active, or "regular," employee of SKB. On October 21, 1999, Thomas, through her attorney, requested that SKB treat her employment prior to March 1, 1999 as common law employment for purposes of SKB's benefit plans. On January 20, 2000, SKB notified Thomas that her employment prior to March 1, 1999 would be treated as that of a "leased employee," and, therefore, she had not begun to accrue benefits until March 1, 1999. Thomas appealed the denial of benefits, but SKB again denied her claims. In April 2000, Thomas received a form letter from SKB stating that SKB might owe her some retirement benefits.

Darden received work assignments at SKB from Kelly Services. Beginning in October 1993, Darden worked full-time as a material handler in a SKB warehouse in King of Prussia, Pennsylvania. Darden contends that he was a common law employee of SKB. On March 1, 1999, Darden became a full-time active, or "regular," employee of SKB. On January 21, 2000, Darden, through his attorney, requested that SKB treat his employment prior to March 1, 1999 as common law employment for purposes of SKB's benefit plans. On February 4, 2000, SKB notified Darden that his employment prior to March 1, 1999 would be treated as that of a "leased employee," and, therefore, he had not begun to accrue benefits until March 1, 1999. Darden appealed the denial of benefits, but SKB again denied his claims. In April 2000, Darden received a form letter from SKB stating that SKB might owe him some retirement benefits.

Allen began working on the premises of SKB in 1968 as a "temp" worker. After leaving in 1970 to have a family, she returned to work as a "temp" at SKB in 1978. Soon thereafter, Allen became a regular full-time employee. However, in May 1981, Allen was laid off. In February 1982, Allen returned to work as a part-time "temp" at SKB. In 1988, she began working essentially full-time hours. In May 1994, a supervisor told Allen that she would have to receive her assignment to work at SKB through Kelly Services or she would be laid off. Allen reported to Kelly Services and continued working on the premises of SKB until December 1998 when an injury required her to stop working. Allen was not a full-time active, or "regular," employee at SKB at the time this case was filed or when the class was certified, and did not receive the form letter Thomas and Darden (amongst others) received. Therefore, she is not a member of the class, but rather is an individual plaintiff whose claims are identical to the class' counts I through VII.

In addition to Thomas and Darden, over 1100 other individuals were sent a form letter from SKB in April 2000 regarding an error SKB apparently made in calculating the retirement benefits (or eligibility and vesting credits) of full-time active em-

ployees of SKB who had previously worked at SKB through a temporary employment agency. This letter is referred to as the "Dear Colleague" letter. These 1100 other employees constitute the class Thomas and Darden represent.[3] The "Dear Colleague" letter informed class members that they were required to provide SKB with detailed information about their past services as temporary employees as a condition precedent to any determination of their eligibility for employee benefits.

## STANDARD OF REVIEW

Either party to a lawsuit may file a motion for summary judgment, and the court will grant it "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir.1996) (citation omitted). When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and "all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* Additionally, "[s]ummary judgment may not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are

undisputed." *Ideal Dairy*, 90 F.3d at 744 (citation omitted). However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir.1990).

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of his claim. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

## DISCUSSION

### I. Count I

#### A. *Statute of Limitations*

Defendants argue that plaintiffs' claim for benefits contained in count I is time-

---

**3.** Class members have been defined as "those persons, now officially classified by SB as employees of SB to whom SB sent the form letter entitled 'Dear Colleague' dated 'April, 2000.'"

barred because, they contend, the statute of limitations began to run on plaintiffs' claims when they started to work at SKB. Plaintiffs, in opposition, argue that the statute of limitations does not begin to run for an ERISA benefits claim until plaintiffs make a claim for such benefits to the employer/fiduciary and such claim is denied. For the reasons set forth below, I find that the facts of this case indicate that the statute of limitations for plaintiffs' claim for benefits did not accrue until they were hired as regular employees by SKB and received the plan descriptions. Hence, defendants' motion for summary judgment on count I on this ground will be denied.

ERISA does not contain a specific statute of limitations for benefits claims, brought under § 502(a)(1)(B), as it does for breach of fiduciary duty claims. *See* 29 U.S.C. § 1113. "As a general rule, when Congress omits a statute of limitations for a federal cause of action, courts 'borrow' the local time limitation most analogous to the case at hand." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir.1992). As this court has already decided, "The state claim most analogous to a claim for denial of benefits due under the terms of a covered plan is a breach of contract claim." *Caruso v. Life Ins. Co. of North America*, 2000 WL 876581, at *2 (E.D.Pa.2000). The statute of limitations for a breach of contract claim in Pennsylvania is four years. *See* 42 Pa. Cons.Stat. § 5525(8). Federal common law, however, determines when the statute of limitations begins to run for claims under § 502(a)(1)(B). *Keystone*

*Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir.1988), *overruled on other grounds* by *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997).

The Third Circuit has not yet addressed this issue in the context of an ERISA claim for benefits. Plaintiffs, therefore, cite authority from other jurisdictions as guidance. Plaintiffs argue that their claim for benefits did not accrue until a formal claim for benefits was made and denied by SKB. They cite Fifth Circuit authority, which simply recognizes "the general rule that no cause of action accrues under ERISA until ... an application [for benefits] is actually filed and denied." *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir.1990) (citing *Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir.1981)). The *Paris* court reasoned that to hold that "[t]o hold otherwise 'would put an almost intolerable burden on employees covered by pension plans. It would require individuals who are unversed in the law to be constantly vigilant.'" *Paris*, 637 F.2d at 361 (quoting *Morgan v. Laborers Pension Trust Fund*, 433 F.Supp. 518, 522 n. 5 (N.D.Cal.1977)).[4]

The Fifth Circuit is the only one that strictly adheres to the holding that the earliest point at which an ERISA claim for benefits can accrue is the date on which benefits were denied by the fiduciary. Every other circuit that has addressed this issue has held that the explicit denial of benefits by the fiduciary is the *latest* possi-

---

**4.** The Plaintiffs also cite outdated Ninth Circuit authority, *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496 (9th Cir.1984), in which the Ninth Circuit also held that "an ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied." *Menhorn*, 738 F.2d at 1501. The Ninth Circuit has since found that the "discovery rule" is consistent with this concern, and has accordingly held that "an ERISA cause of action accrues either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir.2000) (citations omitted)

ble point at which an ERISA claim for benefits can be found to accrue, not the *earliest.* *See Miles v. New York State Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983); *Daill v. Sheet Metal Workers' Local 73 Pension Fund,* 100 F.3d 62, 66 (7th Cir.1996); *Union Pacific R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir.1998); *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 649 (9th Cir.2000); *Cotter v. Eastern Conf. of Teamsters Retirement Plan,* 898 F.2d 424, 429 (4th Cir. 1990). These courts have held that "the discovery rule should apply to determine when the statute of limitations begins to run." *Bennett v. Federated Mutual Ins. Co.,* 141 F.3d 837, 838 (8th Cir.1998). The Third Circuit described the discovery rule in *Keystone,* without referring to it by name, explaining, "It is generally the case that a claim accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and source of injury." *Keystone,* 863 F.2d at 1127. The Eighth Circuit has reasoned that "consistent with the discovery rule, an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, 'when there has been a repudiation by the fiduciary which is *clear* and made known to the beneficiary.'" *Beckham,* 138 F.3d at 330 (quoting *Miles,* 698 F.2d at 598). This holding is also consistent with concerns about the burden on plaintiffs to investigate and discover possible errors or abuses without any notice, as the onus is on the fiduciary to clearly make known to the beneficiary that it is repudiating plaintiff's claim (or potential claim) for benefits.

I find the reasoning of these courts persuasive.

The Third Circuit's decisions regarding when an ERISA breach of fiduciary duty claim accrues [5] also support the holding that "a beneficiary's ERISA action accrues 'before a formal denial of a claim for benefits, and even before a claim for benefits is filed, when there has been a repudiation *by the fiduciary* which is *clear* and made known to the beneficiary.'" *Kienle v. Hunter Engineering Co.,* 24 F.Supp.2d 1004, 1006 (E.D.Mo.1998) (first emphasis added) (citation omitted), *aff'd* 187 F.3d 641 (8th Cir.1999). First, however, it must be noted that ERISA itself provides that an action for breach of fiduciary duty accrues on "the earliest date the plaintiff had *actual knowledge* of the breach or violation." 29 U.S.C. § 1113 (emphasis added). In contrast, as noted above, it seems clear that the statute of limitations accrues for an ERISA benefits claim "as soon as a potential claimant either is aware, *or should be aware,* of the existence of and source of injury." *Keystone,* 863 F.2d at 1127 (emphasis added). In other words, a potential claimant must have had actual knowledge (aware) or been in such a situation that the court presumes actual knowledge (should have been aware). Since the latter standard, applicable in the instant case, is less lenient on the plaintiff, the reasoning used in decisions applying the more lenient standard, usually concerning when the statute of limitations for ERISA breach of fiduciary duty accrues, must be carefully examined and applied.

The Third Circuit has created a two-prong test for "actual knowledge" of a breach or violation, which requires "a showing that plaintiffs actually knew not

**5.** *See Gluck v. Unisys Corp.,* 960 F.2d 1168 (3d Cir.1992); *Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.,* 311 F.3d 581 (3d Cir.2002); *Tinley v. Gannett Compa-* ny, 55 Fed.Appx. 74, 2003 WL 68076 (3d Cir.2003); *see also Godshall v. Franklin Mint Co.,* 285 F.Supp.2d 628 (E.D.Pa.2003).

only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA." *Int'l Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL–CIO v. Murata Erie N. Am., Inc.,* 980 F.2d 889, 900 (3d Cir.1992). Based on this interpretation, it seems logical, then, to find that the "actual or presumed knowledge" requirement of an ERISA claim for benefits would similarly necessitate a showing that plaintiffs actually knew, or should have known, not only that they would not receive benefits from the fiduciary but also that the denial of benefits supported (or at least potentially supported) a claim for violation of ERISA. This interpretation is also consistent with the plain meaning of the phrase "the existence of and source of the injury." "Injury" is defined in *Black's Law Dictionary* as: "The violation of another's legal right, for which the law provides a remedy; a wrong or injustice." BLACK's LAW DICTIONARY 789 (7th ed.1999). It would be illogical to hold that one was aware, or should have been aware, of the existence of an injury if that person did not know, or did not have reason to know, that the act allegedly causing the injury was in fact injurious, i.e. a violation of that person's legal right. Relating this discussion back to the specific context of an ERISA claim for benefits, it is clear that failure to receive benefits does not alone constitute an injury. Rather, the failure to receive benefits is injurious only if one is entitled to receive benefits. Hence, an ERISA claim for benefits cannot accrue until the claimant knew, or should have known, that he or she was arguably entitled to benefits.

■ This leads me to conclude that the Eighth Circuit's holding that "a beneficiary's ERISA action accrues 'before a formal denial of a claim for benefits, and even

before a claim for benefits is filed, when there has been a repudiation *by the fiduciary* which is *clear* and made known to the beneficiary,'" *Kienle,* 24 F.Supp.2d at 1006 (first emphasis added) (citation omitted), is most appropriate. The next step, then, is to apply this standard to the facts of the instant case.

Defendants argue that application of this rule to the facts of this case leads to the conclusion that plaintiffs' claim accrued when they first began to work at SKB, and cite the opinions in *Kienle* and *Schultz v. Texaco Inc.,* 127 F.Supp.2d 443 (S.D.N.Y. 2001), in support of their position. In *Kienle,* plaintiff was hired by defendant, the fiduciary of the plan, and was informed upon hiring that defendant would consider him "a self-employed independent business person" and not an employee of the company itself. *Id.* at 1005. The situation in *Kienle* therefore differs in a significant way from the instant case. Plaintiffs here were not informed *by SKB* that they would not be considered employees of SKB for the purposes of receiving benefits. Rather, they were told by either Kelly or Olsten that they were employees of that particular company. Def. Exs. I H, I. Olsten also had the employees sign a form that explicitly stated that plaintiffs were employees of Olsten and not an employee of any client of Olsten's. Def. Ex. I H. It is not clear that either of these communications would suffice as a "clear repudiation" by SKB under Eighth Circuit precedent, such that plaintiffs' claim for benefits could be said to accrue on the date they were hired by Kelly or Olsten and assigned to work at SKB. Hence, this authority is of little force when applied to the instant case.

In *Schultz,* the court found that plaintiffs knew, or should have known, that their benefits plans were being repudiated when they began to receive checks from a

temporary employment agency rather than from Texaco itself. *Schultz,* 127 F.Supp.2d at 448. The application of the Second Circuit standard in this case highlights a necessary component of a repudiation: knowledge of an entitlement, or potential entitlement, to benefits under the plans. Defendants fail to recognize a crucial difference between the facts of the instant case and those of *Schultz:* unlike the claimants in *Schultz,* plaintiffs were *not* regular employees of SKB, aware of benefits entitlements, who then suddenly became employees of Kelly or Olsten merely receiving assignments to work at SKB. Rather, plaintiffs initially worked at SKB through the temporary employment agencies, *see* Am. Compl. ¶¶ 51–58, 75–77, and did not become "regular" employees of SKB until March 1999. Plaintiffs did not receive copies of the relevant plans prior to becoming "regular" employees at SKB, Def. Exs. I D, F, and hence could not have known that they arguably fit the eligibility criteria for benefits under those plans until then. Defendants in the instant case have not argued or provided evidence that plaintiffs knew (or should have known) that they were arguably entitled to benefits prior to receiving copies of the benefits plans. It seems clear, then, that prior to receiving copies of the relevant plans, defendants' classification could not be a "clear repudiation" because plaintiffs were not aware of any claim or potential claim to benefits being repudiated. Hence, the instant case is distinguishable from *Schultz,* again making the authority defendants cite of little force when applied to the instant case.

In *Godshall v. Franklin Mint Co.,* a court in the Eastern District of Pennsylvania addressed a situation similar to the one in the instant case, but, again, in an ERISA breach of fiduciary duty case. Despite this difference, the court's reasoning is instructive. The court explained:

The exclusion of independent contractors from employee benefits plans is not a *per se* violation of ERISA, provided that the terms of the relevant plans actually permit such exclusions, and that an ERISA claim may exist is not patently obvious. The only way for a common law employee to discover the breach of fiduciary duty is to have access to the eligibility definition in the plans themselves.

*Godshall,* at 636 (E.D.Pa.2003). Similarly, exclusion of employees in plaintiffs' situation is not a *per se* violation of ERISA. Rather, the permissibility of such exclusion is generally dependent upon whether the plan permits it, or, as in the instant case, whether the employer correctly classified claimants as members of an excluded group. Hence, the only way for plaintiffs to discover that the denial of benefits was in violation of ERISA is to have access to the eligibility definition in the plans themselves. Based on this reasoning, the court in *Godshall* concluded:

> This court will not infer that a worker who has been classified as an independent contractor and denied benefits on that purported basis has actual knowledge of a fiduciary breach since "[t]he disclosure of a transaction that is not inherently a statutory breach of fiduciary duty … cannot communicate the existence of an underlying breach."

*Id.* (citation omitted). Since all inferences must be drawn in plaintiffs' favor for the purposes of this motion for summary judgement, I too cannot infer that plaintiffs knew or should have known that they were arguably entitled to benefits before they were given copies of the plans to inspect themselves. Defendants have not provided any evidence that would support a finding that plaintiffs knew or should have known before this point.

Plaintiffs were aware that they were considered employees of Kelly or Olsten and that they would not be receiving benefits from SKB under the relevant plans. Def. Exs. D, F. Plaintiffs did not receive plan descriptions prior to becoming regular employees of SKB in 1999. Def. Exs. D, F. Upon review of the eligibility definitions contained in the plan descriptions, plaintiffs would have realized that according to these definitions, they were arguably entitled to benefits for the time prior to being hired as regular employees. This is the point at which plaintiffs obtained "actual knowledge." Plaintiffs did not have reason to suspect prior to that time that they would be entitled to benefits under the SKB plans, especially since nobody ever told them that they were so entitled. Def. Exs. D, F. Defendants have not produced any evidence supporting a conclusion that plaintiffs "should have known" that they were arguably entitled to benefits prior to their receipt of the plan descriptions in 1999. Hence, the point at which they obtained actual knowledge is, in this case, the same point at which they "should have" obtained such knowledge. This is not a case where the claimants received the plan descriptions and did not read them for years before discovering that they arguably had a claim for benefits years earlier. Rather, plaintiffs in the instant case were diligent, and filed claims for benefits with SKB soon after they were hired as regular employees by SKB.

For the reasons set forth above, I conclude that based on the current record plaintiffs' claim for benefits did not accrue until they were hired as regular employees by SKB and received the plan descriptions, which was in 1999. The statute of limitations, then, clearly does not bar this suit, as defendants claim. Therefore, defendants' motion for summary judgment on count I on this ground will be denied.

## B. Standard of Review for Decision by Benefits Committee

■ Defendants argue that the appropriate standard of review of the decision of their benefits committee to deny benefits to plaintiffs is the deferential "arbitrary and capricious" standard, as set forth in *Abnathya v. Hoffmann–La Roche, Inc.* 2 F.3d 40, 45 (3d Cir.1993). Plaintiffs argue, in opposition, that a heightened arbitrary and capricious standard, as set forth in *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377 (3d Cir.2000), and applied in *Smathers v. Multi–Tool, Inc.,* 298 F.3d 191 (3d Cir.2002), is the appropriate standard to apply in this case. For the reasons that follow, I agree with plaintiffs that the heightened arbitrary and capricious standard is the appropriate standard to apply in this case.

■ The Supreme Court has explained that a decision to deny benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the administrator is given such discretion, the court generally should apply the "arbitrary and capricious" standard. In the Third Circuit, this means that a court should overturn the decision of a plan administrator "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya,* 2 F.3d at 45 (citation omitted). There is no dispute that the benefit plans at issue grant the benefits committee discretionary authority to determine eligibility for benefits and construe the terms of the plans. Def. Ex. I N (Article IX). Hence, it seems proper to apply the "arbitrary and capricious" standard. However, in *Bruch,* the Su-

preme Court made it clear that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Bruch*, 489 U.S. at 115, 109 S.Ct. 948 (citation omitted). The Third Circuit established a standard in *Pinto* to guide future decisions about benefit denials, which requires courts "to consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers." *Pinto*, 214 F.3d at 393. More specifically, the court established a "a sliding scale method, intensifying the degree of scrutiny to match the degree of the conflict," *id.* at 379, so that the arbitrary and capricious standard is "'more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is.'" *Id.* at 392–93 (citation omitted). The first step in my analysis, then, is to determine if there is an apparent conflict of interest which would necessitate a heightened standard of review.

In *Smathers*, the Third Circuit extended the holding of *Pinto*, which involved an insurance company that both funded and administered a benefits plan, to employers who fund and administer their own benefits plans. *Smathers*, 298 F.3d at 197. Although the court recognized "that the risk of a conflict of interest is decreased where the administrator and funder of the plan is the employer," *id.*, it emphasized the possibility that a conflict of interest could still exist in a situation where the employer is both the administrator and funder. The court went on to find a conflict in the case "because the employer [was] directly funding a portion of the plan and [was] benefitted by denying the

claims." *Id.* at 199. This is precisely the situation the court is faced with in the instant case; SKB both funds and administers its benefits plans and is benefitted by denying plaintiffs' claims. *See* Def. Ex. I N (Articles VIII, IX). Further, as the Third Circuit made clear in *Skretvedt v. E.I. DuPont de Nemours and Co.*, a heightened arbitrary and capricious standard is warranted "when a pension plan is unfunded, i.e., not 'actuarially grounded, with the company making fixed contributions to the pension fund,' [*Pinto*,] 214 F.3d at 388, but rather funded by the employer on a claim-by-claim basis." *Skretvedt*, 268 F.3d 167, 174 (3d Cir.2001). Although SKB makes fixed contributions to the pension fund, Def. Ex. I N (Article VIII), it contributes to the Retirement Savings Plan on a claim-by-claim basis, Def. Br. I 18–20, and pays welfare benefits per individual. Pl.Ex. I F (p. 43). These facts are sufficient to invoke the heightened arbitrary and capricious standard in the instant case. The next step in the analysis, determining the severity of the conflict and therefore the amount of deference to accord the benefits committee, is not as easily resolved.

Although the Third Circuit has established the "heightened arbitrary and capricious" standard, and has provided some guidance as to when it should be applied, the court has yet to establish a clear method for determining where on the sliding scale of deference a particular conflict falls. Courts applying the heightened arbitrary and capricious standard thus far have been on the "mild end" when they find "no evidence of conflict other than the inherent structural conflict," *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 385 (3d Cir.2003),[6] and have been on the "far end of the arbitrary and capricious

---

6. *See also Cimino v. Reliance Standard Life Ins. Co.*, 2001 WL 253791 (E.D.Pa.2001).

'range' " when they find "procedural anomalies." *Pinto*, 214 F.3d at 394; *see also Weinberger v. Reliance Standard Life Ins. Co.*, 54 Fed.Appx. 553, 2002 WL 31746546 (3d Cir.2002) (finding the district court's application of "moderate deference" to be in error given the troubling aspects of Reliance's decision-making procedure); *Lemaire v. Hartford Life and Accident Ins. Co.*, 69 Fed.Appx. 88, 2003 WL 21500334 (3d Cir.2003). All of the cases applying the heightened arbitrary and capricious standard, however, appear to have dealt with claims for disability benefits, making comparisons to the instant case inexact.

 The factors the *Pinto* court initially listed to consider when assessing the severity of the conflict of interest are not all applicable to the instant case. The *Pinto* court listed the "sophistication of the parties, the information accessible to the parties, . . . the exact financial agreement between the insurer and the company [and] . . . the current status of the fiduciary." *Pinto*, 214 F.3d at 392. First, there is no evidence in the record that plaintiffs are "sophisticated" in any sense related to this case. For example, in *Rosen v. Provident Life & Accident Ins. Co.*, this court concluded that the plaintiff was not sophisticated for the purposes of its analysis, despite her holding an advanced college degree, because "there [was] no evidence that she was sophisticated in terms of ERISA." *Rosen*, 2003 WL 22254805, at *7 (E.D.Pa.2003). Similarly, in *Cohen v. Standard Ins. Co.*, this court held that an attorney was not sophisticated for the purposes of its analysis because "he [was] a labor attorney and there [was] no evidence that he [was] sophisticated in insurance or medical matters." *Cohen*, 155 F.Supp.2d 346, 353 (E.D.Pa.2001). Considering these prior decisions on this issue, and the lack of evidence to the contrary, it is clear that plaintiffs are not sophisticated in terms of ERISA or the processes of obtaining employee benefits. This factor supports increasing the degree of scrutiny.

The remainder of the factors initially listed by the court in *Pinto* are not particularly relevant to the instant case, or retirement benefits cases more generally. For example, even though the information upon which defendants' relied to make their decision was available to plaintiffs, i.e. plaintiffs' own employment history and the terms of the relevant plans, plaintiffs' claims are not dependent on this information, but rather on defendants' interpretation of this information. Hence, access to this information is not particularly relevant to plaintiffs' claims for benefits. Next, since there is no insurer for these benefits plans, there can be no relationship between the company and an insurer that would have any bearing on this case. Finally, there is no evidence in the record concerning defendants' financial status, i.e. whether the company is "breaking up, or laying off a significant percentage of [its] employees, or moving all [its] operations," *Pinto*, 214 F.3d at 392, although the court could almost take judicial notice of the prosperity of worldwide pharmaceutical companies. Since these factors are not particularly relevant considerations in the instant case, the absence of complicating situations that fit the mold of these delineated factors should not be fatal to plaintiffs' claim.

The court in *Pinto* also wrote, "[W]e look not only at the result-whether it is supported by reason-but at the process by which the result was achieved." *Id.* at 393. The "procedural anomalies" in that case were: "(1) the insurer's reversal of its original determination without the examination of additional evidence; (2) a self-serving selectivity in the use of evidence;

and (3) a bias in decision-making to the benefit of the insurer." *Russell v. Paul Revere Life Ins. Co.*, 148 F.Supp.2d 392, 406 (D.Del.2001) (interpreting and citing *Pinto*, 214 F.3d at 393–94). Of course, the existence of any of these procedural anomalies when a fiduciary denied an individual's (or group's) claim for retirement benefits would indicate a substantial conflict of interest. Such procedural irregularities, however, are not likely to exist in retirement benefit denials because administrators' decisions in such cases are not fact-specific. That is, retirement benefits denials for large numbers of people, such as the class in the instant case, can be made simultaneously because the determinations are more dependent on the administrator's interpretation of the relevant plans than on individualized facts. The only "evidence" really considered is the text of the plans at issue and the employment history of the applicants, as opposed to possibly conflicting medical reports. Hence, there is no weighing or dismissal of evidence that could be considered self-serving or irrational and discriminatory. Further, since large groups of people are almost identically situated (the only difference generally being the exact amount of time in the employees' respective positions), there will be no discrepancy between decisions.[7] There is no evidence in the current record to the contrary. Accordingly, none of the procedural irregularities present in the disability benefits cases are present in the instant case, other than a potential bias in the interpretation of the plans.

One final difference between disability benefits denials and retirement benefits denials is that individual cases for disability benefits involve minimal amounts of money in comparison to the significant sums that could be at stake with one decision regarding retirement benefits. Again, this stems from the fact that individuals in retirement benefits cases are similarly, if not identically, situated, such that awarding benefits to one person could open the gates to claims and awards for a number of other employees. In disability benefits denials, the relatively small amount of money at stake minimizes the incentive for employers to deny legitimate claims and thereby alienate their employees and expose themselves to liability. Hence, courts are reluctant to increase the level of scrutiny significantly when relatively small sums of money are involved unless procedural anomalies are present. *See Smathers*, 298 F.3d at 199.[8] This case, in contrast, involves claims totaling millions of dollars.

Even though the procedural anomalies encountered in prior cases do not seem to be present in the instant case, other than

---

7. For example, the benefits committee apparently found the cases of Thomas and Darden so similar that it used the same letter to explain its decision to deny the benefits appeal. Def. Exs. I U, V. In fact, it is clear that the committee simply substituted Darden's name into the letter where Thomas's name had been-the committee forgot to replace Thomas's name in one spot and in another spot referred to Darden as "she." Apparently, the committee felt that its exact reasoning employed to deny Thomas's appeal for benefits was applicable to other individuals' claims for benefits, despite minor differences in the individuals' situations.

8. The Third Circuit has also declined to find a conflict of interest that would warrant the application of the heightened arbitrary and capricious standard because of the minimal amount of money at issue. *See Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir.2002) (concluding that since "Romero 'failed to adduce evidence that a potential payout of approximately $50,000 in benefits by SmithKline, a company with $12.5 billion in revenues in 1999, created a conflict,' " the district court appropriately declined to apply the heightened arbitrary and capricious standard of review).

potential bias, it still is apparent from the facts viewed in the light most favorable to plaintiffs that there is sufficient evidence for the court to hold an evidentiary hearing to determine where on the *Pinto* "sliding scale" the heightened standard of review falls. First, a decision awarding benefits to persons who receive assignments from SKB through various employment agencies (also referred to as "temporary workers" and "contingent workers") could cost the company millions of dollars because SKB both funds and administers the plan.[9] Pl.Ex. I 14. Next, SKB recognized and specifically sought to reduce this benefits risk and any associated liability prior to its decision to deny plaintiffs' benefits. Pl.Ex. I 14. Further, it seems clear that the benefits committee knew of this potential benefits risk when it decided to deny plaintiffs' claim for benefits; the "team owner" of the committee formed to address the "contingent worker" situation, June Abramson, was simultaneously a member of the benefits committee that made the benefit determinations in the instant case. Pl. Exs. I 33, 34. However, as the court directed in *Pinto*, an evidentiary hearing "regarding the conflict of interest, and ways in which the conflict may have influenced the decision," *Pinto*, 214 F.3d at 395, is necessary to determine how much deference is appropriate. Thereafter, I will need to review defendants' decision while considering that level of deference. Of course, all of this is moot if summary judgment for the defendants is warranted on the record currently before this court. Hence, I will analyze defendants' decision to deny benefits to determine whether a reasonable factfinder

could conclude that SKB acted arbitrarily and capriciously based on the highest level of scrutiny possible on this record, which would thereby preclude summary judgment for the defendants on plaintiffs' claim for benefits.

1. The Pension Plan, the Cash Balance Plan and the Retirement Savings Plan

■ The benefits committee first denied plaintiffs' claims for benefits under the pension plan, cash balance plan and retirement savings plan, collectively referred to as "the retirement plans," Def. Exs. I U, V, because the company considered them leased employees and not common law employees of SKB. Def. Exs. I E, G. Upon appeal, the committee further supported its decision to deny benefits to plaintiffs by explaining that even assuming, *arguendo*, plaintiffs were common law employees of SKB, as I must do when considering this motion for summary judgment,[10] plaintiffs were not eligible for benefits under the retirement plans because they did not receive "compensation," as that term is defined by the plans and interpreted by the committee. Although this decision is supported by reason, I find that when viewing the facts and inferences in the light most favorable to plaintiffs a reasonable factfinder could conclude that the circuitous route the committee had to take to reach its attenuated conclusion that plaintiffs are not eligible for benefits under the retirement plans was "the result of self-dealing instead of the result of a trustee exercising its fiduciary duties." *Pinto*, 214 F.3d at 394. Hence, there is a genuine issue of material fact as to whether SKB acted

---

9. Of course, this is not the case for plaintiff Allen's individual claim for benefits. Hence, the scrutiny of the committee's decision will likely not be as heightened as it will be with the class members. This will be addressed and resolved at the evidentiary hearing.

10. Defendants conceded that plaintiffs were common law employees for the purposes of this motion. Def. Rep. Br. I 2–3.

arbitrarily and capriciously, making summary judgment inappropriate.

At the outset, it must be made clear that although the committee's first letters to plaintiffs explained that the committee considered plaintiffs to be "leased employees" and therefore not eligible to receive benefits under the retirement plans, defendants do not support their decision to deny benefits on this ground in their motion for summary judgment. Rather, defendants extrapolate on their reasoning set forth in the committee's second letter to plaintiffs, that plaintiffs did not receive "compensation" and were therefore not entitled to receive benefits under the retirement plans. Further, if plaintiffs were "leased employees," then they would clearly be ineligible for benefits under the plans, as the plans specifically exclude "[e]mployees solely by reason of being a leased employee" from the definition of "covered class" in the plans. Def. Exs. I O, P. Since defendants do not argue that plaintiffs were "leased employees" in their brief in support of their motion for summary judgment, only the "compensation" reasoning will be examined for the purpose of this motion for summary judgment.

Plaintiffs are assumed to be common law employees of SKB for the purposes of this motion for summary judgment, and so they clear the first few obstacles to qualifying for benefits under the retirement plans. First, they clearly meet the definition of "employee." Next, all "employees" of "participating companies," the list of which includes SKB, Def. Ex. I O, are included in the definition of "covered class" (those eligible to participate in the retirement plans), except for a few limited subsets, in which plaintiffs are not included. Hence, plaintiffs are included in the "covered class," and appear eligible, according to the plans' indirect definition of "eligibility," for benefits under the retirement plans. Usually, the inquiry stops there, as it did in the cases upon which defendants rely for support of their position. *See Montesano v. Xerox Corp. Retirement Income Guarantee Plan,* 117 F.Supp.2d 147 (D.Conn.2000); *Hensley v. Northwest Permanente P.C. Retirement Plan & Trust,* 258 F.3d 986 (9th Cir.2001). In the instant case, however, the committee continued.

The committee looked at how benefits would be calculated for plaintiffs assuming they were eligible. It initially noted that the opening balance for the cash balance plan is dependent on the value of the "accrued benefit" under the previous pension plan. The pension plan defines "accrued benefit" in terms of an individual's "compensation." Similarly, under the retirement savings plan, the amount of the company's contributions to the plan for each eligible employee is dependent on that employee's "compensation." All of the plans define "compensation" as: "[p]articipant's total taxable income received *from* a Participating Company." Def. Ex. I N (emphasis added). In an appendix to the plans, SKB lists those companies that are considered "participating companies" and neither Kelly nor Olsten is on the list. Hence, the argument goes, since plaintiffs received their compensation from either Kelly or Olsten and not from SKB, they did not receive "compensation" that would contribute to any "accrued benefit" or would allow for company contributions. However, the preposition "from" could be considered ambiguous, as it could refer to the primary source and/or a secondary source. To clarify, the committee explained that it applied a "W–2 definition" to the term "compensation," meaning that only wages and other payments reported on a W–2 issued by Smith-Kline, i.e. where SKB is the primary source, would be considered "compensation." This "W–2 definition" is not mentioned anywhere in the plan provisions.

In essence, then, the determination of whether the committee's decision to deny benefits to plaintiffs was arbitrary and capricious turns on whether its interpretation of the term "compensation" was arbitrary and capricious under the heightened standard.

It is well settled that a company could limit plan participation to certain groups or classifications of employees, as long as that limitation is not based upon age or length of service. 29 U.S.C. § 1052(a)(4); *see also Bauer v. Summit Bancorp,* 325 F.3d 155, 166 (3d Cir.2003). As the Third Circuit stated in *Bauer,* "In fact, an employer could even exclude all persons whose names begin with the letter 'H,' as long as this was not deemed to be discriminatory in application." *Bauer,* 325 F.3d at 166 n. 2. Of course, the administrator's interpretation cannot conflict with the terms of the plan itself. *See Epright v. Environmental Resources Management, Inc. Health and Welfare Plan,* 81 F.3d 335, 339 (3d Cir.1996). If the terms of the plan are ambiguous, an administrator is generally granted discretion to interpret such terms and thereby define the scope of the plan. It is even permissible for an administrator to look outside the plan to determine the company's objectives when it created the plan, and then interpret the ambiguous terms accordingly. In the instant case, the committee looked to the terms of the plan, followed the multiple internal references, and stopped at the arguably ambiguous definition of "compensation": "total taxable income from a Participating Company." The committee then looked to SKB's intention in defining the plan's scope, relying on the Employee Handbook, which explains that "[i]ndividuals who work on temporary assignments as employees of an outside, temporary agency are not eligible for any company-sponsored benefits or compensation." Def. Exs. I R,

U, V. The committee concluded that it was SKB's intention to exclude persons not receiving W–2 forms directly from SKB, "whether or not such persons were found to be common-law employees retroactively or for other purposes." Def. Exs. I U, V. Although this interpretation is supported by reason, and would therefore pass muster under the traditional arbitrary and capricious standard, there is some doubt as to whether such an interpretation would survive the more penetrating degree of scrutiny of the heightened arbitrary and capricious standard.

The skepticism with which a factfinder would be viewing the committee's decision could lead to the logical question: if plaintiffs are common law employees of SKB and therefore otherwise eligible under the terms of the retirement plans, how could the benefits committee in good faith conclude that plaintiffs did not, at the same time, receive compensation from SKB? In other words, given the assumed conclusions that plaintiffs are common law employees and not leased employees, even if made only for the sake of this motion for summary judgment, a reasonable factfinder could conclude that it was arbitrary and capricious for the committee to nonetheless define "compensation" in such a way as to exclude plaintiffs from eligibility for benefits. This is especially true when one considers the potential misguided motivation for the decision (saving millions of dollars), as the factfinder would be required to do. Further, a reasonable factfinder could conclude that the circumstances of the relationship between Kelly or Olsten and SKB necessitate a finding that plaintiffs did, in fact, receive compensation from SKB. As the court found in *Pinto,* "a factfinder could conclude that [SKB's interpretation of "compensation"] was the result of self-dealing instead of the result of a trustee carefully exercising its fiduciary duties to grant [plaintiffs] the

benefits due" them under the plans. *Pinto*, 214 F.3d at 394. Because there is a genuine issue of material fact as to whether SKB acted arbitrarily and capriciously under the heightened scrutiny of *Pinto*, summary judgment is inappropriate and defendants' motion for summary judgment on plaintiffs' claim for benefits under the retirement plans will be denied.

### 2. The Welfare Plans

██ The benefits committee first considered plaintiffs' claims for benefits under the "welfare plans" when plaintiffs appealed the committee's decision to deny them benefits under the retirement plans. Def. Exs. I U, V. The committee explained that "SB limits eligibility for its Welfare Plans, like its medical plan, to full and part-time 'regular' employees," Def. Exs. I U, V, and the committee did not consider plaintiffs "regular" employees, even if they were assumed, *arguendo*, to be common law employees. Hence, the validity of defendants' decision is dependent upon whether their classification of plaintiffs as not "regular" employees, as that term is defined in the employee handbook, was arbitrary and capricious. I find that when viewing the facts and inferences in the light most favorable to plaintiffs a factfinder could conclude that the committee's classification of plaintiffs as not "regular" employees and therefore not eligible for benefits under the welfare plans was arbitrary and capricious.

The employee handbook denotes four status definitions for employees of SKB: full-time regular; part-time regular; full-time temporary; and part-time temporary. It also goes on to explain that "[t]emporary status definitions apply only to company employees. Individuals who work on temporary assignments as employees of an outside, temporary agency are not eligible for any company-sponsored benefits or compensation." Def. Ex. I R. Although the committee did not explicitly classify plaintiffs as "temporary" employees in its letters to plaintiffs denying benefits, defendants do so in their motion for summary judgment.[11] Since plaintiffs are assumed to be "company employees" for the purposes of this motion for summary judgment, the committee's decision therefore rests on whether its classification of plaintiffs as "temporary," as opposed to "regular," employees was arbitrary and capricious. The difference between a temporary employee and a regular employee is simply that the temporary employee's "definite duration [is] not to exceed 12 months (or 18 months in extraordinary cases)." Def. Ex. I R; *see also* Pl.Ex. I 33. Defendants do not support their classification of plaintiffs as temporary employees. In contrast, plaintiffs have produced a significant amount of evidence in support of their contention that plaintiffs were not temporary employees, including evidence that plaintiffs worked at SKB for longer than twelve (or even eighteen) months. Pl. Exs. I 3, 4; Def. Br. I 2–3. As the only explanation for classifying plaintiffs as "temporary employees," rather than "regular employees," is their length of service, I find that a reasonable factfinder could conclude that the committee's classification of plaintiffs as temporary employees who are not entitled to benefits under the welfare plans was arbitrary and capricious. Defendants' motion for summary judgment on plaintiffs' claim for benefits under the welfare plans will therefore be denied.

---

**11.** Additionally, the committee's use of the term "leased employee" in the letters is consistent with this classification.

## II. Counts II, IV, V and VI

### A. Generally

Defendants move for summary judgment on all counts containing claims that defendants breached their fiduciary duties because defendants argue that they did not owe any duty to plaintiffs prior to their becoming "regular" employees. Defendants accurately explain that under ERISA, fiduciary obligations are owed only to "participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Defendants then go on to argue that plaintiffs were not participants or beneficiaries because they were not eligible to receive benefits from SKB's various benefits plans. Hence, defendants' argument is dependent on a finding that plaintiffs were not entitled to benefits under the plans. Since I have found that a genuine issue of material fact exists as to whether plaintiffs were, in fact, entitled to benefits, there is clearly also a genuine issue of material fact regarding whether defendants owed plaintiffs any fiduciary duty. Therefore, defendants' motion for summary judgment on counts II, IV, V and VI on this ground must be denied. Defendants' arguments in support of summary judgment on counts IV, V and VI, specifically, will now be addressed in turn.[12]

### B. Counts IV and V, Specifically

■ Defendants argue further that plaintiffs' claims in counts IV and V for breach of fiduciary duty are precluded by the Supreme Court's decision in *Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), in which the Court explained, "[W]here Congress elsewhere provided adequate relief for a beneficiary's

injury, there will likely be no need for further equitable relief, in which case such relief would normally not be 'appropriate.' " *Varity*, 516 U.S. at 515, 116 S.Ct. 1065. As this court has interpreted the holding in *Varity*, if "plaintiffs have a sufficient remedy under § 502(a)(1)(B), the court will grant defendants' motion to dismiss plaintiff's misinterpretation claim." *Feret v. Corestates Financial Corp.*, 1998 WL 426560, at *5 (E.D.Pa.1998). In *Varity*, the Court concluded that relief was available under § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides for injunctive or other appropriate equitable relief for harm caused by an administrator's breach of fiduciary duty, because plaintiffs in that case were not able to proceed under any other subsection of § 502, such as § 502(a)(1)(B). More specifically, the plaintiffs in *Varity* were no longer members of the plan and therefore had no "benefits due them under the terms of the plan." *Varity*, 516 U.S. at 515, 116 S.Ct. 1065 (citing § 502(a)(1)(B)). The Third Circuit has also applied the reasoning in *Varity* to allow a beneficiary to seek injunctive relief because the plan at issue was no longer functioning, and the beneficiary was therefore unable to assert a claim under § 502(a)(1)(B). *See Ream v. Frey*, 107 F.3d 147, 152 (3d Cir.1997).

■ Count I, which was addressed in Part I of this opinion, asserts a claim based on § 502(a)(1)(B), although not explicitly. Plaintiffs seek a declaratory judgment that they are entitled to benefits under the retirement and welfare plans. In contrast, in counts IV and V plaintiffs seek equitable relief for alleged breaches of fiduciary duty, in violation of ERISA

---

12. Defendants also argue that the court should award summary judgment specifically on count II because this count does not assert a claim, but rather is a prayer for relief. Since count II does not actually assert a

claim, there are no grounds to grant summary judgment. Of course, if plaintiffs ultimately succeed on their claims, the remedies sought in count II will only apply to the class members.

§ 404, 29 U.S.C. § 1104. Specifically, plaintiffs claim that defendants misclassified plaintiffs and misinterpreted the terms of the retirement and welfare plans. The direct outcome of such errors was an erroneous denial of plaintiffs' claims for benefits under these plans. Hence, although the actions alleged by plaintiffs could constitute breaches of fiduciary duty, plaintiffs would be made whole for such breaches if they were awarded benefits for the time during which defendants allegedly misclassified and misinterpreted. This is precisely the relief sought in count I. Plaintiffs argue that they do not seek benefits for the claims asserted in counts IV and V, but rather seek "an accounting and other injunctive relief that goes well beyond anything that could be awarded on a simple claim for benefits." Pl. Br. I at 39. Plaintiffs miss the point of *Varity* and its progeny. These opinions make clear that the inquiry is whether or not plaintiffs have another remedy available to them to redress the wrongs allegedly done. Hence, although plaintiffs seek relief other than benefits for these alleged breaches of fiduciary duty, i.e. removal of current fiduciaries and appointment of independent fiduciaries, "plaintiffs have available a remedy other than that provided by § 502(a)(3), and they have sought such relief-a declaratory judgment under 502(a)(1)(B) [count I]." *Feret*, 1998 WL 426560, at *5. "Where Congress otherwise has provided for appropriate relief for the injury suffered by a beneficiary, further equitable relief ought

not be provided." *Ream*, 107 F.3d at 152. Plaintiffs can be made whole by receiving the benefits allegedly owed them under the terms of the plan. Therefore, further equitable relief, other than as explicitly provided in § 502(a)(3), would be inappropriate. There are no genuine issues of material fact regarding counts IV and V and defendants are entitled to judgment as a matter of law. Accordingly, defendants' motion for summary judgment on counts IV and V will be granted.[13]

## C. Count VI, Specifically

■ Plaintiffs claim in count VI that defendants violated § 104(b)(1)(A) of ERISA, 29 U.S.C. § 1024(b)(1)(A), when they failed to provide plaintiffs with a copy of summary plan descriptions of the retirement and welfare plans within ninety days of their becoming participants.[14] Defendants move for summary judgment on this claim because, they argue, plaintiffs were not entitled to such information since they were not participants of SKB's benefits plans before they were hired as regular employees. Whether or not plaintiffs were entitled to benefits is an issue not yet resolved. Regardless of whether it is ultimately determined that plaintiffs are or are not entitled to benefits, they could still possibly meet the definition of "participant" in ERISA, and as interpreted by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 116–18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court explained, "In our view, the term

---

**13.** Defendants also argue that counts IV and V are time-barred because the statute of limitations on such claims has expired. Since I am granting summary judgment on these counts for the reasons set forth above, it is unnecessary to address defendants' statute of limitations argument regarding counts IV and V.

**14.** Plaintiffs also claim that defendants violated §§ 104(b)(1)(B) and 104(b)(3) because they

did not provide a summary plan description to plaintiffs within 210 days after the plan year in which a change to the plan is adopted and because they failed to provide a summary annual report to plaintiffs within 210 days after the close of the plan's fiscal year, respectively. Since the analysis of these claims is identical to the analysis of the claim for violation of § 104(b)(1)(A), I will not address these claims separately.

'participant' is naturally read to mean either 'employees in, or reasonably expected to be in, currently covered employment.'" *Bruch,* 489 U.S. at 117, 109 S.Ct. 948. Based on the fact that defendants' motion for summary judgment on plaintiffs' claim for benefits is denied, it is clear that a reasonable factfinder could conclude that plaintiffs were "reasonably expected" to be in covered employment.

It is important to note, however, that the Court in *Bruch* was considering a claim under § 401(b)(4), which requires fiduciaries to provide plan information to beneficiaries and participants *upon request.* No such claim exists in the instant case. Hence, I must consider whether this interpretation of "participant" is equally applicable to § 401(b)(1)(A), which requires fiduciaries to *automatically* provide information to participants and beneficiaries.

The Court in *Bruch* explained that considering the possibility of incurring significant penalties for failure to provide information to participants, "a rational plan administrator or fiduciary would likely opt to provide a claimant with the information *requested* if there is any doubt as to whether the claimant is a 'participant.'" *Id.* at 118, 109 S.Ct. 948 (emphasis added). In cases where there are requests for information, the fiduciary is provided with information about a particular potential participant and is then able to evaluate the possibility of that employee actually being or becoming a participant. Hence, an employer is given the opportunity to evaluate an employee whom the fiduciary never would have otherwise considered a potential participant, and is penalized only after not providing

the information sought to that potential participant. In the instant case, however, finding that SKB was required to provide information to plaintiffs prior to their becoming regular employees would impose a very different obligation: it would require defendants to provide information automatically to every person who ever worked at SKB, regardless of whether or not SKB considered that person to be its employee.

 As this court has already found, "Congress' intent in requiring plan administrators covered by ERISA to provide covered participants with comprehensive description plans informing participants of their rights and obligations was to prevent inequities stemming from the administrator's failure to apprise participants of the essential requirements of their benefit plans." *Goldberg v. RCA Corp.,* 1990 WL 204229, at *3 (E.D.Pa.1990). Plaintiffs could have requested information from SKB about the plans at issue here, and if SKB had refused to comply with such a request, plaintiffs might now have a cause of action under § 401(b)(4). Alas, they did not. A conclusion that defendants were not required to provide plan information to plaintiffs prior to plaintiffs' being hired as regular employees would not conflict with Congress' intent to protect employees. Additionally, such a finding would avoid the seemingly inequitable position of penalizing defendants for not providing information to persons who are *retroactively* found to have been eligible for benefits as participants in the plan. For this reason, defendants' motion for summary judgment on count VI will be granted.[15]

**15.** Defendants also argue that count VI is time-barred because the statute of limitations on the claim has expired. Since I am granting summary judgment on this count for the

reasons set forth above, it is unnecessary to address defendants' statute of limitations argument regarding count VI.

## III. Count III

Plaintiffs allege that defendants engaged in a pattern of misclassification to prevent the class from obtaining benefits under the relevant plans, which, it is claimed, violates § 510 of ERISA, 29 U.S.C. § 1140. Defendants contend that their actions do not violate § 510. This court has explained, as defendants point out, "[A] fundamental prerequisite to a Section 510 action is an allegation that the employer-employee relationship was changed in some discriminatory or wrongful way." *Stout v. Bethlehem Steel Corp.*, 957 F.Supp. 673, 694 (E.D.Pa.1997). "Section 510 was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Feret v. Corestates Financial Corp.*, 1998 WL 426560, at *2 (E.D.Pa. 1998). Plaintiffs do not allege, let alone support with evidence, that defendants "discharged, fined, suspended, expelled, disciplined, or discriminated against" them. 29 U.S.C. § 1140. Therefore, defendants' motion for summary judgment on count III will be granted.[16]

## IV. Count VII

Plaintiffs allege that defendants' actions violate ERISA § 202, 29 U.S.C. § 1052, which sets forth minimum participation standards for pension plans. This section of ERISA states: "No pension plan may require, as a condition of participation in the plan, that an employee complete a period of service with the employer or employers maintaining the plan beyond the later of the following dates-(i) the date on which the employee attains the age of 21; or (ii) the date on which he completes 1 year of service." 29 U.S.C. § 1052. Plaintiffs contend that defendants' "misclassification of employees resulted, during the period of limitations, in the imposition on plaintiffs ... periods of eligibility far greater than one year before a class member could even become eligible to attain benefits." Am. Compl. ¶ 143. In response, and in support of their motion for summary judgment, defendants argue, as they consistently have, that "[t]he exclusion of plaintiffs was based on their status as employees of a temporary agency and the absence of any compensation from SmithKline, not their age or length of service." Def. Br. I 31. As the Third Circuit made clear in *Bauer v. Summit Bancorp*, SKB "could limit plan participation to certain groups or classifications of employees, as long as that limitation was not based upon age or length of service." *Bauer*, 325 F.3d 155, 166 (3d Cir.2003). Even if defendants' interpretation of the plans and classification of employees is deemed to be arbitrary and capricious, thereby establishing that plaintiffs are entitled to benefits, plaintiffs have provided no evidence in support of their contention that defendants' exclusion of plaintiffs was based on age or length of service. Plaintiffs, therefore, have not established that there is a genuine issue of material fact concerning defendants' alleged violation of 29 U.S.C. § 1052. For this reason, defendants' motion for summary judgment on count VII will be granted.[17]

16. Defendants also argue that count III is time-barred because the statute of limitations on the claim has expired. Since I am granting summary judgment on this count for the reasons set forth above, it is unnecessary to address defendants' statute of limitations argument regarding count III.

17. Defendants also argue that count VII is time-barred because the statute of limitations on the claim has expired. Since I am granting summary judgment on this count for the reasons set forth above, it is unnecessary to address defendants' statute of limitations argument regarding count VII.

## V. Counts VIII, IX and X [18]

### A. Internal Revenue Code Provisions not Enforceable through ERISA

 Counts VIII, IX and X of the supplemented amended complaint raise allegations of ERISA violations on behalf of the entire class. Count VIII alleges that defendants' failure to calculate plaintiffs' vesting and eligibility credits when they became "regular" employees of SKB and continued refusal to award such credits after that point constitute a breach of defendants' fiduciary duty. Count IX alleges that defendants' failure to keep track of vesting and eligibility credits for plaintiffs is a breach of defendants' fiduciary duty. Finally, count X alleges that the "burden shifting scheme" imposed on all class members, under which plaintiffs were required to provide the information supporting their entitlement to vesting and eligibility credits, constitutes a breach of defendants' fiduciary duty. Defendants argue that § 414 of the Internal Revenue Code ("the Code"), 26 U.S.C. § 414, governs the granting of vesting and eligibility credits to the class, and plaintiffs do not have a cause of action under ERISA to enforce this section of the Code. Def. Br. III 3–6. Plaintiffs respond by clarifying their claims, which are not that defendants' actions regarding plaintiffs' vesting and eligibility credits violate the Code, but rather that their actions violate the plans themselves, thereby violating certain provisions of ERISA.

Defendants correctly state, "ERISA does not incorporate every aspect of the Internal Revenue Code relating to qualified benefit plans, like the SmithKline pension plans." Def. Br. III 4. Defendants also adequately support their argument that § 414 of the Code is not incorporated into ERISA and, therefore, cannot form the basis of plaintiffs' ERISA claims. This point, despite its accuracy, does not support the granting of summary judgment on counts VIII, IX and X, though. Plaintiffs have provided evidence that defendants' actions regarding the vesting and eligibility credits violate the terms of the plans themselves, and therefore constitute a breach of fiduciary duty under ERISA. Specifically, the former chairman of the SKB benefits committee, Stanley Serocca, stated in his deposition, "[W]e had not administered the programs in accordance-not on the law but in accordance with the documents." Pl.Ex. III F. Hence, there is a genuine issue of material fact concerning

---

**18.** Defendants do not make the argument that the breach of fiduciary duty claims contained in the supplemented amended complaint, i.e. counts VIII–XIII, are barred by the Supreme Court's decision in *Varity v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), as they do for the breach of fiduciary duty claims contained in counts IV and V. For the sake of consistency, however, I considered whether the *Varity* preclusion argument applies to the breach of fiduciary duty claims contained in counts VIII through XIII. It is clear that the claims in counts VIII through XIII are not precluded by the Court's *Varity* decision because these claims cannot be equated with claims for benefits. As explained in Part II.B of this opinion, plaintiffs' "breach of fiduciary duty" claims in counts IV and V are really claims for benefits, since the alleged "breach" was improperly denying plaintiffs' claims for benefits due. Since plaintiffs have a sufficient remedy under § 502(a)(1)(B) for such claims, i.e. benefits, "further equitable relief" is inappropriate and the breach of fiduciary duty claims are precluded by *Varity*. In contrast, the breach of fiduciary duty claims contained in counts VIII through XIII focus on the process of defendants' decision making, as opposed to the result of such. Hence, an award of benefits will not cure the defects alleged, meaning that plaintiffs do not have a sufficient remedy under § 502(a)(1)(B). This, in turn, means that plaintiffs' breach of fiduciary duty claims contained in counts VIII through XIII are not precluded by the Supreme Court's decision in *Varity*.

whether defendants failed to appropriately interpret and apply the terms of SKB's benefits plans relating to vesting and eligibility credits, regardless of the requirements of the Code. For this reason, I will deny defendants' motion for summary judgment on counts VIII, IX and X on this ground.

### B. Claims Create a Conflict Among Class Members

■ Defendants argue that certain factual allegations of plaintiffs in their supplemented amended complaint create an insurmountable conflict among class members. Since such a conflict "is at odds with the principles of representative litigation," Def. Br. III 8 (citing *Gillis v. Hoechst Celanese Corp.*, 1992 WL 68333, at *3 (E.D.Pa.1992)), defendants argue that the court should grant summary judgment on counts VIII, IX and X. Defendants, however, have failed to show that there is, in fact, a conflict in the claims asserted by plaintiffs in this case. First, defendants rely on a factual allegation plaintiffs make to support their argument that defendants' application of the "Dear Colleague" process breached their fiduciary duty, rather than on a claim plaintiffs make for relief. Defendants claim "[t]here is only one logical conclusion from these allegations: at least some of the class members seek to reverse SmithKline's award of eligibility and vesting credits to other class members, including Thomas and Darden." Def. Br. III 8. Plaintiffs do not actually seek this relief, though. Hence, this allegation does not create a conflict among the class members.

Defendants also argue that those class members who have received eligibility and vesting credits "have reason to be opposed to the remaining class members receiving additional credits ... [because t]he Cash Balance Plan has a fixed amount of assets

and providing additional credits to class members may increase the risk that those assets would be depleted prematurely." Def. Rep. Br. III 5 n. 5. However, Serocca's deposition testimony directly contradicts this assertion. He made it clear that the cost of granting eligibility and vesting credits to plaintiffs would be borne "by SmithKline, not one of the plans." Pl.Ex. III F. Hence, it seems clear that there is no conflict among the class members that would justify the granting of summary judgment on counts VIII, IX and X. Therefore, I will deny defendants' motion for summary judgment on counts VIII, IX and X on this ground.

### C. Counts VIII and IX, Specifically

Although defendants do not provide specific arguments in support of their motion for summary judgment on counts VIII and IX, their general arguments in support of summary judgment on counts VIII through XIII could arguably be applied to counts VIII and IX. To be thorough, I will quickly address the arguments that (1) named plaintiffs do not represent the class on these claims and therefore do not have standing to assert these claims, and (2) defendants did not breach a fiduciary duty under ERISA because they had no duty to investigate potential claims.

#### 1. Lack of Standing to Assert these Claims

■ Defendants argue that "[b]ecause Thomas and Darden received these service credits, they have not even suffered the purported injury (the denial of service credit) that is the focus of Counts VIII through XIII .... [and therefore] do not have standing to litigate the claims of class members allegedly denied the service credit." Def. Rep. Br. III 4. As plaintiffs point out, defendants' argument is inapplicable to plaintiffs' claims contained in

counts VIII and IX. These counts assert that defendants' failure to properly administer the plans prejudiced all plaintiffs, and that all plaintiffs were thereby harmed by defendants' actions. The fact that the class representatives later received the service credits sought does not mean that they were not harmed at all. Rather, defendants' alleged failure to properly administer the plan arguably constitutes a breach of fiduciary duty to the class representatives, as well as the class. Plaintiffs have produced evidence that would allow a reasonable factfinder to conclude that defendants did, in fact, breach their fiduciary duty to the class representatives by failing to "properly administer" SKB's plans. *See* Pl.Ex. III F (deposition testimony of Serocca, in which he stated, "[W]e had not . . . properly administered . . . the Retirement Savings Plan and Pension Plan in crediting individuals with Kelly or Olsten or other similarly situated temps with service. . . ."). For this reason, I will deny defendants' motion for summary judgment on counts VIII and IX on this ground.

### 2. No Duty to Investigate Claims

Defendants argue at length that ERISA does not impose a duty to investigate, and therefore defendants did not breach their fiduciary duty. Def. Rep. Br. III 9–12. The crux of defendants' argument is that ERISA imposes a duty to " 'disclose only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection,' " and that defendants fulfilled that duty with their "Dear Colleague" letter in 2000. Def. Rep. Br. III 9–12 (quoting *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.*, 93 F.3d 1171, 1182 (3d Cir.1996)). Again, however, this argument is inapplicable to plaintiffs' claims contained in counts VIII and IX. These counts assert, respectively, that defendants breached their fiduciary duty prior to 2000 by not awarding the service credits which defendants knew were owed to plaintiffs and by failing to keep track of the vesting and eligibility service credits earned by the class for temporary agency service at SKB, even though they had the information necessary to do so. Hence, defendants' alleged compliance with their fiduciary duty in 2000 does not affect the propriety or impropriety of their actions prior to that point. A reasonable factfinder could conclude that defendants already knew plaintiffs were entitled to service credits, and that failure to award such credits constitutes a breach of defendants' fiduciary duty. Similarly, a reasonable factfinder could conclude that defendants' failure to inform plaintiffs that they could be entitled to such credits prior to 2000 constitutes a breach of their fiduciary duty. Therefore, defendants' motion for summary judgment on counts VIII and IX on this ground will be denied.

### D. Count X, Specifically

Again, defendants' general argument in support of summary judgment on counts VIII through XIII, i.e. that the named plaintiffs do not represent the class on these claims and therefore do not have standing to assert these claims, could be applied to count X. Additionally, defendants argue that their requirement that plaintiffs provide documentation supporting their claims did not breach a fiduciary duty under ERISA because defendants had no duty to investigate potential claims. I will address the latter argument first.

### 1. No Duty to Investigate Claims

Plaintiffs claim that the requirement set forth in the "Dear Colleague" letter that plaintiffs provide SKB with detailed information about their temporary agency service was a breach of defendants'

fiduciary duty. Plaintiffs allege that SKB already had the information it was requesting from the plaintiffs, or could get such information with greater ease than plaintiffs. Defendants make a compelling argument that requiring plaintiffs to gather such information did not violate their fiduciary duty because they had no duty to investigate claims on their own. In support of this argument, defendants cite *Abnathya v. Hoffmann–La Roche, Inc.*, which holds that if a benefit plan "places the burden on the claimant to submit ... evidence to support eligibility," it is improper to then shift the burden to the fiduciary to investigate on its own. *Abnathya*, 2 F.3d 40, 46 (3d Cir.1993). Defendant then points to language in its retirement savings plan and pension plan that specifically places the burden on plaintiffs. Def. Ex. III 3, 4, 6. Although this argument successfully refutes plaintiffs' second argument in support of count X-that SKB could get such information with greater ease than plaintiffs-it misses plaintiffs' other argument in support-that SKB already had the information it was requiring plaintiffs to also obtain. In other words, plaintiffs contend that SKB did not have to conduct an investigation to obtain the necessary information. Hence, the argument goes, requiring as a condition precedent to considering plaintiffs' claims for service credits that the class members duplicate that information was a breach of defendants' fiduciary duty.

Plaintiffs have provided evidence that SKB did, in fact, already have the information it requested from plaintiffs in the "Dear Colleague" letter. Specifically, plaintiffs direct the court's attention to an email from a human resources executive at SKB, Alan Jones, to the SKB executive directing the day-to-day operations of the "Dear Colleague" process, Margaret Alzamora, which states:

> We also, of course, have their original resumes and SB applications that list their service as an Agency Temp with SB prior to being hired by SB, along with other notes in their personnel files. Prior to making a job offer, we verify the past employment of potential candidates.... I feel the employment dates listed on the SB applications are accurate in most cases since this was verified at the time prior to hire.

Pl.Ex. I M. Alzamora responded to Jones, "A decision was made here at Corporate to place the responsibility on the employee to provide the documentation from the Temp Agencies so as not to burden the HR community with any of this responsibility." Pl.Ex. I N. Further, SKB had a computer database, the "POP database," containing all of the information requested by SKB in the "Dear Colleague" letter for a number of the class members. Pl. Exs. I P, Q. In contrast to the facts of the cases to which defendants cite in support of their position, defendants did not have to contact an outside source to obtain the information they needed to evaluate plaintiffs' claims. In fact, it appears plaintiffs already "furnish[ed] to SmithKline Beecham such data as SmithKline Beecham may consider necessary for the determination of the Employee's rights and benefits under the Plan," Def. Exs. III 4, 5, in their original resumes and SKB applications, thereby complying with the mandates of the plans.[19] A factfinder could conclude that

---

19. Defendants cite language of the Retirement Savings Plan effective January 1, 1990, which contains the term "the Committee" in place of "SmithKline Beecham," which is contained in the more recent, applicable plans. Hence, although the language quoted by defendants, Def. Rep. Br. III 7 (citing Def. Ex. III 3), might support a contrary finding, the language of the relevant plan is ambigu-

defendants breached their fiduciary duty by requiring plaintiffs to produce documentation of their prior work with Kelly or Olsten that SKB arguably already had in its possession. Therefore, defendants' motion for summary judgment on count X on this ground will be denied.

### 2. Lack of Standing

To reiterate, defendants argue that "[b]ecause Thomas and Darden received these service credits, they have not even suffered the purported injury (the denial of service credit) that is the focus of Counts VIII through XIII . . . . [and therefore] do not have standing to litigate the claims of class members allegedly denied the service credit." Def. Rep. Br. III 4. Again, defendants' argument is inapplicable to plaintiffs' claims contained in count X. The harm resulting from defendants' alleged breach of fiduciary duty is not merely the denial of service credit to some plaintiffs. Rather, all plaintiffs were arguably harmed by SKB's requirement that plaintiffs produce documents further supporting their claims for benefits. If defendants breached their fiduciary duty, an issue not decided here, it is clear that all plaintiffs were harmed by going through the unnecessary process of obtaining documentation of their prior service at SKB. Plaintiffs have produced evidence that would allow a reasonable factfinder to conclude that defendants did, in fact, breach their fiduciary duty to all plaintiffs. Hence, the plaintiffs have standing to assert the claim contained in count X on behalf of the entire class. For this reason, I will deny defendants' motion for summary judgment on count X on this ground.

## VI. Counts XI and XII

▇ Again, defendants contend that the class representatives, Thomas and

Darden, do not have standing to assert the claims contained in counts XI and XII on behalf of the class plaintiffs because they were not harmed by the alleged violations. This court has already recognized that in counts XI and XII "named plaintiffs allege facts establishing that defendants breached their fiduciary duties to not all, but only part of the certified class." *Thomas v. SmithKline Beecham Corp.*, 2002 WL 32351172, at *4 n. 5 (E.D.Pa.2002). Specifically, named plaintiffs allege that defendants used the failure to respond to the "Dear Colleague" letter as a pretext for withholding employee benefit credits (count XI) and used arbitrary criteria to deny benefits even when employees responded (count XII), which constitutes a breach of fiduciary duty to the approximately 800 class members who were improperly denied benefits as a result of these actions. Even though the "Dear Colleague" process arguably prejudiced all plaintiffs, as alleged in count X, the specific aspects of the process that served as a pretext for denying benefits, which serve as the bases of counts XI and XII, only harmed those plaintiffs who did not receive service credits. Since "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members," *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)), Thomas and Darden must be in the group of plaintiffs who were denied service credits to be able to assert a claim on its behalf.

When this court addressed this issue earlier, it was in the context of a motion to supplement the amended complaint. So, as explained in the previous opinion, the

---

ous and leaves a genuine issue of material fact to be resolved by a factfinder.

court granted plaintiffs' motion to supplement their complaint since the allegations of the complaint, all that a court considers when deciding a motion to supplement a complaint, did not provide a basis for the court to infer that the named plaintiffs in fact lacked standing to assert the claims. Now, however, since the court is considering defendants' motion for summary judgment, it must consider the evidence produced by both parties to date. There is no genuine issue of fact that Thomas and Darden were awarded service credits for the time they worked at SKB prior to being hired as regular employees. It is clear, then, that Thomas and Darden were not injured by the specific aspects of the "Dear Colleague" process that allegedly served as a pretext for denying benefits to approximately 800 members of the class. Hence, Thomas and Darden do not have standing to assert the claims contained in counts XI and XII on behalf of the class. Therefore, I will grant defendants' motion for summary judgment on counts XI and XII on this ground.

## VII. Count XIII

 Defendants do not produce any novel arguments in support of their motion for summary judgment on count XIII, but rather impliedly assert the previously addressed arguments advanced to support summary judgment on other counts. The only argument that appears to be applicable, though, is defendants' argument that the named representatives of the class, Thomas and Darden, do not have standing to assert the claim. In this court's opinion on plaintiffs' motion to supplement the complaint, I classified the claims in count XIII as particular to only a subset of the plaintiffs' class. *Thomas v. SmithKline Beecham Corp.*, 2002 WL 32351172, at *4 n. 5 (E.D.Pa.2002). On closer analysis of the supplemented amended complaint, however, it appears that plaintiffs assert that defendants breached their fiduciary duty to all plaintiffs by not advising all of the class members of their right to appeal. In other words, regardless of whether or not a class member received service credits, plaintiffs allege that each member had the right to be notified of his or her right to appeal SKB's decision on the matter. *See* Supp. Am. Compl. ¶ 275 (alleging that some of the class members who received service credits "were not awarded full and complete vesting and eligibility credits"). Although it is clear that Thomas and Darden received service credits, Def. Rep. Exs. III 1, 2, it is not clear that such credits are the "full and complete vesting and eligibility credits" to which Thomas and Darden claimed to be entitled. If not, then it is plausible that Thomas and Darden would have appealed SKB's decision if they had been notified of their right to do so. This, in turn, means that there is a genuine issue of material fact that the class representatives were harmed by defendants' failure to notify plaintiffs (*all* plaintiffs) of their right to appeal SKB's decision regarding service credits. For this reason, defendants' motion for summary judgment on count XIII on the ground that the class representatives do not have standing will be denied.

## CONCLUSION

Defendants' motion for summary judgment will be granted in part and denied in part. Plaintiffs have shown that there is a genuine issue of material fact concerning their claims for benefits under the retirement plans and for breach of fiduciary duty caused by defendants': (1) initial (i.e. when they became "regular" employees of SKB) and continuous failure to calculate and award plaintiffs' vesting and eligibility credits to which they are allegedly entitled; (2) failure to keep track of vesting and eligibility credits for plaintiffs; (3) im-

position of a "burden shifting scheme" on plaintiffs, requiring them to provide the information supporting their entitlement to vesting and eligibility credits; and (4) failure to notify plaintiffs of their right to appeal SKB's benefits decision. Therefore, defendants' motion for summary judgment on these claims will be denied. In contrast, plaintiffs have failed to show that there is a genuine issue of material fact concerning the remainder of their claims, warranting the grant of summary judgment on these claims. An appropriate order follows.

## ORDER

And now, this _____ day of December, 2003, upon consideration of the motions for summary judgment of defendants SmithKline Beecham Corporation, the SKB employee benefit plans and the administrators of those plans (Docs.# 62, 65, 69), the accompanying memoranda of law, defendants' statements of undisputed facts (Docs.# 63, 66), plaintiffs' responses in opposition thereto (Docs.# 94, 95), plaintiffs' accompanying statements of undisputed facts, and defendants' reply memoranda in further support of their motions for summary judgment (Docs.# 98, 99), it is hereby ORDERED that the defendants' motions are GRANTED in part and DENIED in part. Judgment is ENTERED in favor of SmithKline Beecham Corporation, the SKB employee benefit plans and the administrators of those plans and against plaintiffs on plaintiffs' claims contained in counts III, IV, V, VI, VII, XI and XII. Summary judgment is DENIED on plaintiffs' claims contained in counts I, II, VIII, IX, X and XIII.

A status conference to determine the date, length of time and issues to be resolved at the evidentiary hearing is sched-uled for December 29, 2003 at 3 p.m. in Courtroom 14B.